## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE CATALANO, on behalf of himself and all others similarly situated, <br><br>           Plaintiff, <br><br>     v. <br><br> BMW of NORTH AMERICA, LLC, a New Jersey limited liability company; BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, a corporation organized under the laws of the Federal Republic of Germany; and BMW MANUFACTURING CO., LLC, a Delaware limited liability company, <br><br>           Defendants. | Case No. 1:15-cv-04889 |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO (1) DISMISS, STAY, OR TRANSFER THIS ACTION PURSUANT TO THE FIRST-FILED RULE AND (2) DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# **TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................1

FACTUAL ALLEGATIONS ................................................................................3

LEGAL STANDARDS ........................................................................................5

      A.      The legal standard for BMW's motion to dismiss. ..................................5

ARGUMENT .........................................................................................................6

      A.      The first-filed rule does not apply to class actions with claims entirely based on differing state law ...............................................................6

      B.      Class actions do not require plaintiffs to have the exact same model of cars as the rest of the class members, and standing in class actions is not determined by reference to the named plaintiff, only ...............................................8

      C.      Plaintiff's CPOW covers defects in the Vehicle's electronics systems, and BMW was required to cover those defects under the terms of the warranty ...............................................................10

      D.      Mr. Catalano's implied warranty claim should not be dismissed.........13

      E.      BMW's challenge to Mr. Catalano's fraud-based claims on the basis that it did not have knowledge of the defect fails based upon the plain allegations in the FAC ...............................................................17

      F.      Mr. Catalano states a valid claim for declaratory relief.......................21

      G.      Mr. Catalano's injunctive relief claim is not preempted.......................22

VI.      CONCLUSION.............................................................................................26

## TABLE OF AUTHORITIES

### CASES

Page(s)

*Alin v. Am. Honda Motor Co., Inc.*, No. 08-4825,
2010 WL 1372308 (DN.J. Mar. 31, 2010)......................................................................12

*Anderson v. Jamba Juice Co*.,
888 F. Supp. 2d 1000 (N.D. Cal. 2012) ...........................................................................9

*Angermeir v. Cohen*,
14 F. Supp. 3d 134 (S.D.N.Y. 2014)................................................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................5,6

*Astianu v. Dreyer's Grand Ice Cream, Inc*., Nos. C-11-22 2910 EMC and C-11-3164 EMC,
2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012)................................................9

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).............................................................................................5,6

*Banks v. Nissan N. Banks v. Nissan N. Am., Inc*., No. C 11-2022 PJH,
2012 U.S. Dist.  LEXIS 37754 (N.D. Cal. Mar. 20, 2012)..............................................20

*Barnes ex rel. Barnes v. Koppers, Inc*.,
534 F.3d 357 (5th Cir. 2008) .........................................................................................23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (U.S. 2007)..................................................................................................5

*Beneway v. Superwinch, Inc*.,
216 F. Supp. 2d 24 (N.D.N.Y.2002)...............................................................................16

*Brazil v. Dole Food Co*., No. 12-cv-01831-LHK,
2013 U.S. Dist. LEXIS 136921 (N.D. Cal. Sept. 23, 2013) .............................................9

*Bussian v. DaimlerChrysler Corp*.,
411 F.Supp.2d 614 (M.D.N.C. 2006) ............................................................................25

*Buzzard v. Roadrunner Trucking, Inc*.,
966 F.2d 777 (3d Cir. 1991)...........................................................................................24

## TABLE OF AUTHORITIES, Cont.

Page(s)

*Cali v. Chrysler Group LLC*, No. 10 CIV. 7606 JSR
      2011, WL 383952 (S.D.N.Y., Jan. 18, 2011)
      *aff'd*, (2d Cir. 2011) 426 Fed. Appx. 38......................................................................12

*Catanese v. Unilever*,
      774 F. Supp. 2d 684 (D.N.J. 2011) ...............................................................................8

*Cf. Raymond Motor Transp., Inc. v. Rice*,
      434 U.S. 429 (1978)..............................................................................................24,25

*Chamberlan v. Ford Motor Co.*,
      314 F. Supp. 2d 953 (N.D. Cal. 2004) ...............................................................23,24,25

*Chiarelli v. Nissan North America, Inc.*, No. 14-CV-4327 NGG VVP,
      2015 WL 5686507 (E.D.N.Y., Sept. 25, 2015) ............................................................18

*Chrysler Corp. v. Tofany*,
      419 F.2d 499 (2d Cir. 1969)...........................................................................................24

*City of Columbus v. Ours Garage &Wrecker Serv., Inc.*,
      536 U.S. 424 (2002).................................................................................................24,25

*Clancy v. Bromley Tea Co.*, No. 12-cv-03003-JST,
      2013 U.S. Dist. LEXIS 11272 (N.D. Cal. Aug. 9, 2013)..................................................9

*Cox House Moving, Inc. v. Ford Motor Co.*, No. CIVA 7:06-1218 HMH,
      2006 WL 2303182 (D.S.C., Aug. 8, 2006) ...................................................................25

*Denny v. Ford Motor Co.*,
      87 N.Y.2d 248 (N.Y. Ct. App. 1995).............................................................................16

*Derienzo v. Trek Bicycle Corp.*,
      376 F. Supp. 2d 537 (S.D.N.Y. 2005)............................................................................16

*Dewey v. Volkswagen AG*,
      558 F. Supp. 2d 505 (D.N.J. 2008) ................................................................................19

*DiMuro v. Clinique Labs., LLC*,
      572 Fed. Appx. 27 (2d Cir. 2014)....................................................................................9

*Dixon v. Ford Motor Co.*, No. 14-CV-6135 (JMA) (ARL),
      2015 U.S. Dist. LEXIS 146263 (E.D.N.Y. Sep. 30, 2015)..............................................13

iii

# TABLE OF AUTHORITIES, Cont.

Page(s)

*Doll v. Ford Motor Co.*,
    814 F. Supp. 2d 526 (D. Md. 2011) ...............................................................13

*Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*,
    522 F.3d 271 (2d Cir. 2008) .........................................................................8

*English v. Gen. Elec. Co.*,
    496 U.S. 72 (1990) ......................................................................................23

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ........................................................................................5

*Foman v. Davis*,
    371 U.S. 178 (1962) ......................................................................................6

*Freightliner Corp. v. Myrick*,
    514 U.S. 280 (1995) ....................................................................................26

*Garcia v. Chrysler Grp. LLC*, No. 14-cv-8926,
    2015 U.S. Dist. Lexis 116733 (S.D.N.Y. Sept. 1, 2015) (Forrest, J.)...................... *passim*

*Geier v. Am. Honda Co.*,
    529 U.S. 861 (2000)....................................................................................25

*Glass v. BMW of N. Am., LLC*, No. CIV.A. 10-5259 ES,
    2011 WL 6887721 (D.N.J. Dec. 29, 2011) ...................................................15

*Gray v. BMW of N. Am., LLC*,
    22 F. Supp. 3d 373 (D.N.J. 2014) ...............................................................20

*Grodzitsky v. Am. Honda Motor Co. Inc.*, No. 2:12-cv-1142-SVW-PLA,
    2013 U.S. Dist. LEXIS 82746 (C.D. Cal., June 12, 2013) .............................20

*Haag v. Hyundai Motor America*,
    969 F.Supp.2d 313 (W.D.N.Y. 2013) ....................................................12,18

*Henry v. Rehab Plus Inc.*,
    404 F. Supp. 2d 435 (E.D.N.Y. 2005) .........................................................16

*Hunter's Run Stables v. Triple H Constr. Co.*,
    938 F. Supp. 166 (W.D.N.Y. 1996) .............................................................13

iv

# <u>TABLE OF AUTHORITIES, Cont.</u>

Page(s)

*In re Bridgestone/Firestone, Inc.*,
    153 F. Supp. 2d 935 (S.D. Ind. 2001) ...........................................................................25

*In re Ford Fusion and C-Max Fuel Economy Litigation,* No. 13-MD-2450 KMK,
    2015 WL 7018369 (S.D.N.Y., Nov. 12, 2015) .........................................................17,18

*In re Frito-Lay, N. Am., Inc.*, No. 12-md-2413 (RRM) (RLM),
    2013 U.S. Dist. LEXIS 123824 (E.D.N.Y. Aug. 29, 2013)...........................................8

*In re MyFord Touch*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) .............................................................................20

*In re TFT-LCD Antitrust Litig.*,
    267 F.R.D. 583 (N.D. Cal. 2010).....................................................................................21

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab.*
*Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010.......................................................................14,25

*Irving v. Mazda Motor Corp.*,
    136 F.3d 764 (11th Cir. 1998) ...................................................................................24,25

*Isip v. Mercedes-Benz USA, LLC*,
    155 Cal. App. 4th 19 (2007) ..........................................................................................15

*Jermyn v. Best Buy Stores, L.P.*,
    256 F.R.D. 418 (S.D.N.Y. 2009). ...................................................................................21

*Kent v. Daimler Chrysler Corp.*,
    200 F. Supp. 2d 1208 (N.D. Cal. 2002) .........................................................................24

*Leonard v. Abbott Labs., Inc.*, No. 10–CV–4676,
    2012 WL 764199 (E.D.N.Y. Mar. 5, 2012).....................................................................17

*Littel v. Bridgestone/Firestone, Inc.*,
    259 F. Supp. 2d 1016 (C.D. Cal. 2003) .........................................................................26

*Lloyd v. J.P. Morgan Chase & Co.*, No. 11 Civ. 9305 (LTS),
    2012 WL 3339045 (S.D.N.Y. Aug. 14, 2012, 11 CIV. 9305 LTS)................................6,7

*Luppino v. Mercedes-Benz USA*, LLC, No. CIV. 09-5582 DMC JAD,
    2010 WL 3258259 (D.N.J. Aug. 16, 2010) .....................................................................19

v

## <u>TABLE OF AUTHORITIES, Cont.</u>

Page(s)

*MacDonald v. Ford Motor Co.*, No. 13-cv-02988-JST,
    2014 U.S. Dist. LEXIS 44858 (N.D. Cal. Mar. 31, 2014)................................................20

*MacDonald v. Ford Motor Company*,
    37 F. Supp. 3d 1087 (N.D. Cal. 2014) ...........................................20

*Maniscalco v. Brother International Corporation*,
    627 F. Supp. 2d 494 (D.N.J. 2009) ...............................................22

*Marshall v. Hyundai Motor America*,
    51 F. Supp. 3d 451 (S.D.N.Y. 2014)....................................................12,14,18

*McCall v. Pataki*,
    232 F.3d 321 (2d Cir. 2000)..................................................5

*McNally v. Chrysler Motors Corp.*,
    284 N.Y.S.2d 761 (N.Y. Sup. Ct. 1967) ...........................................15

*McQueen v. BMW of North America, LLC*, No. CIV.A. 12-06674 SRC,
    2014 WL 656619 (D.N.J. Feb. 20, 2014) ...........................................20

*Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*,
    852 F. Supp. 2d 925 (S.D. Ohio 2012) ...........................................22

*Monell v. Scooter Store, Ltd.*,
    895 F. Supp. 2d 398 (N.D.N.Y. 2012) ...........................................16

*Nasaba Corp. v. Harfred Realty Corp.*,
    39 N.E.2d 243 (1942).........................................19

*Pella Corp. v. Saltzman*,
    606 F.3d 391 (7th Cir. 2010) .........................................21

*Pelman ex rel. Pelman v. McDonald s Corp.*,
    396 F.3d 508 (2d Cir. 2005).........................................17

*PPC Broadband, Inc. v. Transformix Engineering Inc.*, No. 5:14-CV-00315 MAD
    2015 WL 339564 (N.D.N.Y. Jan. 26, 2015).........................................12

*Praxair, Inc. v. General Insulation Co.*,
    611 F. Supp. 2d 318 (W.D.N.Y. 2009) .........................................14

**TABLE OF AUTHORITIES, Cont.**

Page(s)

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013)..................................................................7

*Raniere v. Citigroup Inc.*,
    827 F. Supp. 2d 294 (S.D.N.Y. 2011), *rev'd and remanded,*
    533 Fed. Appx. 11 (2d Cir. 2013)......................................................................7

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009).......................................................................21

*Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344-CIV,
    2014 U.S. Dist. LEXIS 148186 (S.D. Fla. Oct. 7, 2014)...................................13

*Schwarm v. Craighead*,
    233 F.R.D. 655 (E.D. Cal. 2006) .....................................................................21

*Sharma v. BMW of North America*,
    No. 3:13-cv-02274 (MMC) (N.D. Cal. filed May 17, 2013) ...................................... *passim*

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) ......................................................................21

*Starr v. Sony BMW Music* Entm't,
    592 F.3d 314 (2d Cir. 2010).............................................................................6

*State v. Gen. Motors Corp*,
    466 N.Y.S.2d 124 (N.Y. 1983) .......................................................................19

*Strzakowlski v. Gen. Motors Corp.*, No. CIV.A. 04-4740,
    2005 WL 2001912 (D.N.J. Aug. 16, 2005) ....................................................19

*Sutherland v. Ernst & Young LLP*
    726 F.3d 290 (2d Cir. 2013)..............................................................................7

*Szymczak v. Nissan N. Am., Inc.*, No. 10–CV–7493,
    2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011) .................................................18

*Tate-Small v. Saks Inc.*, No. 12 CV 1008 (HB),
    2012 U.S. Dist. LEXIS 76081 (S.D.N.Y. May 31, 2012)....................................8

*Thunander v. Uponor, Inc.*,
    887 F. Supp. 2d 850 (D. Minn. 2012) .............................................................22

## TABLE OF AUTHORITIES, Cont.

Page(s)

*Tomassini v. FCA U.S. LLC*, No. 3:14-CV-1226 MAD/DEP,
   2015 WL 3868343 (N.D.N.Y. June 23, 2015)....................................................9

*UFO Chuting of Haw., Inc. v. Smith*,
   508 F.3d 1189 (9th Cir. 2007) ..........................................................25

*United States v. Locke*,
   529 U.S. 89 (2000)...........................................................................25

*Village of DePue, Ill. v. Exxon Mobil Corp*.,
   537 F.3d 775 (7th Cir. 2008) ............................................................23

*Woods v. Maytag Co*.,
   807 F. Supp. 2d 112 (E.D.N.Y. 2011) .........................................19,20

*Wyeth v. Levine*,
   129 S. Ct. 1187 (2009)......................................................................23

*Wyler-Wittenberg v. MetLife Home Loans, Inc*.,
   899 F. Supp. 2d 235 (E.D.N.Y. 2012) ...............................................8

## STATUTES

49 U.S.C. §§ 30101, *et seq*..........................................................................22,23

49 U.S.C. § 30103(b) (1) ...............................................................................23

Federal Rules of Civil Procedure
   Rule 9(b) ..............................................................................................17
   Rule 12(b)(6)..........................................................................................5
   Rule 15(a)...............................................................................................6
   Rule 23 ...............................................................................................9,21

N.Y. Gen. Bus. Law § 349 (h). ...........................................................17,18,24

## INTRODUCTION

This case involves a material safety defect present across a designated group of vehicles manufactured, designed, tested, inspected, marketed, distributed, sold, and leased by BMW of North America, LLC ("BMW NA"); Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"); and BMW Manufacturing Company, LLC ("BMW MC") (collectively, "BMW" or "Defendants"). The defect is based on the location or materials for critical and sensitive electronic components at the lowest points in vehicle trunk or cargo compartments—which are unknown to a consumer when she purchases the vehicle, and unprotected from water intrusion or accumulation. *See, e.g.,* FAC[1]  ¶¶ 1-2, 11-12, 39, 46-72.  Under normal and reasonable use, water enters and can accumulate around these vital electronic components, causing driving hazards, electrical shorts, fires, malfunction, failure, and result in an inability to control the vehicle.  FAC ¶¶ 17, 72, 47-48.

BMW is fully aware of the safety hazards related to locating or failing to protect vital electronics in the class vehicles' trunk compartments: consumers have complained and submitted warranty claims directly to BMW, BMW has repair invoices relating to the defect, consumers have submitted complaints regarding these safety issues to the National Highway Traffic Safety Administration ("NHTSA"), and, perhaps most telling, BMW issued a technical service bulletin ("TSB") providing specific directions on re-locating the electronic modules from the lowest point in the trunk to a less vulnerable area of the vehicle.  *See, e.g.*, FAC ¶¶ 52-53, 61, 70-71. The TSB also instructs technicians to place a warning placard in the trunk which informs consumers that liquids should not be present in the trunk due to the sensitive nature of the control

---

[1] "FAC" refers to the Corrected First Amended Class Action Complaint, filed Nov. 3, 2015, Dkt. No. 40.

units located in the trunk and cargo area.  FAC ¶ 6.  The warning placard is installed only after a consumer has experienced symptoms of the defect.

BMW responds by blaming consumers for failing to properly maintain their vehicles and holding them entirely responsible for repair costs and any other economic loss related to the defect.  *See, e.g.,* FAC ¶ 63.  This is BMW's position despite failing to disclose and actively concealing the defect from its customers.  *Id.*  BMW fails to cover repairs related to this defect even though its warranty explicitly covers defects in "materials and workmanship" and "broadly" applies to the Class Vehicles' "electrical" systems.  FAC ¶¶ 16, 45.  It argues that the problem relates to poor vehicle maintenance even though the standard materials that accompany these vehicles (e.g., the owners' manuals and Maintenance Program materials) are silent as to the location of these vital electronic components and the importance of keeping the trunk area free of any liquids.  FAC ¶¶ 36-40.  BMW is aware of this severe safety-related defect and refuses to inform class members about it, provide refunds to class members, or recall the class vehicles. FAC ¶¶ 63-71.  At the same time, BMW boldly pronounces that its "quest for the next innovation" is "not just about greater power and more efficient performance. It's also about safety."  FAC ¶ 46.

BMW contends this action should be dismissed or stayed due to an earlier-filed case in California.  *See Sharma v. BMW of N. Am., LLC*, No. 3:13-cv-02274 (MMC), filed on May 17, 2013 in the United States District Court for the Northern District of California.  BMW Br. at 7-10.[2]  But the cases contain no overlapping claims; the California case is based on that state's law, while this case is based squarely on New York law.  The cases as pleaded pose no danger of

---

[2] "BMW Br." refers to BMW's memorandum in support of the motion to dismiss, filed Dec. 4, 2015, Dkt. No. 56.

conflicting rulings, and do not propose class definitions that embrace any of the same class members.

After arguing that Mr. Catalano's case is "virtually identical" to the 2013 action which survived a motion to dismiss, BMW incongruously challenges the sufficiency of Plaintiff George Catalano's allegations.   BMW Br. at 8.   However, Mr. Catalano has more than adequately alleged that BMW is liable for its actions in not only creating the defects in the car, but failing to honor its warranties to its customers when they ultimately discover the material defects. .

## FACTUAL ALLEGATIONS

This action is based on BMW's concealment and failure to address a material safety defect present in certain BMW vehicle models, namely its 2000-2008 X5 series vehicles, 2004-2010 X3 series vehicles, and 2004-2010 5 series vehicles ("Class Vehicles" or "Vehicles").  The material design and/or manufacturing defect is identical across all Class Vehicles: each of them is equipped with vital electronic modules or components that are located often in the lowest point of the vehicles—such as the trunks and cargo areas—where they are prone to damage and failure due to water exposure.  FAC ¶¶ 1-2, 34-35.  To make matters worse, the Class Vehicles are also equipped with defective sunroof drain tubes, two of which are routed directly next to the electrical components in the trunk of Mr. Catalano's vehicle.  *Id.* ¶ 20.  These tubes are prone to clogging and rupturing, thereby providing a source of water ingress to the compartment where electronic modules or components are located.  *See, e.g., id.* ¶ 34.

The defect presents a serious safety hazard for class members.   Under normal and reasonable use of the Vehicle, water can easily collect, accumulate, puddle, and otherwise reach the electronic components and attendant wiring located in the lowest points of these class vehicles, which has resulted in shorts, fires, loss of electronics, and failure of the modules.  *See,*

3

*e.g.*, *id.* ¶¶ 1-2, 47-48, 51-53.   For example, Mr. Catalano was traveling on the highway at highway speeds with his wife in his vehicle when, without warning, the power in his car completely shut down.   *Id.* ¶ 17.   Mr. Catalano could have been involved in a serious or fatal accident, but was able to avoid a collision and pull his vehicle into a parking lot.   *Id*. After the vehicle was brought to a BMW dealership, the dealership informed Mr. Catalano that water infiltrated the trunk as a result of clogged sunroof drains, resulting in corrosion, and shorting the electronics.   *Id.* ¶ 19-23.   The dealership repaired the corroded electronics and drained water from the electronic modules.   *Id.* ¶¶ 19-20.   BMW refused to pay for the repairs and advised Plaintiff that even though his vehicle is a sports wagon, he should not store water bottles in the trunk or take the vehicle in places where it may come into contact with rain or moisture.   *Id.* ¶¶ 21, 23.

BMW refused coverage even though Mr. Catalano's car was still covered under a warranty.   The Class Vehicles are covered by standard and uniform written warranties—e.g., the New Vehicle Limited Warranty, an extended limited warranty, or the CPOW (together, "Warranties" or "Warranty").   *Id.* ¶ 44.   The Warranties cover all Class Vehicles "against defects in materials or workmanship" and the CPOW specifically provides "broad" coverage of the "electrical" system.   *Id.* ¶ 45.   However, just like it did in Mr. Catalano's case, BMW uniformly refuses to cover repairs related to the defect.   *Id.* ¶¶ 6, 64.

Significantly, not only does BMW refuse to cover problems related to its defective electrical system, it systematically fails to inform consumers of the defect, including in any of the standard operational and maintenance materials that are provided to consumers.   Its Owner's Manual and Maintenance Program materials provide detailed care and use instructions for Class Vehicles, but totally exclude any warnings related to the sensitive electronic components and

modules located in the trunks of the Class Vehicles and entirely omit any instructions for preventing damage to these components and modules.  *Id.* ¶¶ 6, 36-43, 48-50, 54, 66.  Worse, although BMW is aware of this defect (through repair invoices, warranty claims, NHTSA complaints, and complaints directly from its customers), and has issued corrective service bulletins ("TSB"s, since at least 2004), it actively conceals and refuses to disclose it to consumers.  *See, e.g.*, *Id.* ¶¶ 4-7, 52, 53, 61.  And although the TSBs discuss a "repair," BMW refuses to notify its customers, or cover the repair or damage caused by the defective manufacturing, materials selection, or design of its vehicles.  Instead, BMW unequivocally represents that it "prepare[s] [its] vehicles for the unexpected," and that its "quest for the next innovation" is "not just about greater power and more efficient performance. *It's also about safety*."  *Id.* ¶ 62 (emphasis added).

Had Plaintiff and class members known that the Class Vehicles were designed or manufactured so as to put electronic components in one of the most vulnerable parts of the automobile, cause the sunroof drains to become readily dislodged, or that BMW used electronics materials that were inappropriate for contact with water, they never would have purchased or leased the Class Vehicles, would have paid substantially less for them, or would have refused to pay for repairs that BMW was obligated to cover.  *See, e.g.*, FAC ¶¶ 49, 58.

## LEGAL STANDARD

### A.     The legal standard for BMW's motion to dismiss.

A Rule 12(b)(6) motion to dismiss like BMW's tests the legal sufficiency of the claims in the complaint.  *See*, e.g., *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000).  To determine whether a complaint "state[s] a claim to relief that is plausible on its face," a court "must accept as true all of the factual allegations contained in the complaint."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (U.S. 2007)); *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007).  And the plaintiff "must provide the grounds upon which [its] claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  *Garcia v. Chrysler Grp. LLC*, No. 14-cv-8926, 2015 U.S. Dist. LEXIS 116733, at *22 (S.D.N.Y. Sept. 1, 2015) (Forrest, J.) (internal quotation omitted) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 88 (2d Cir. 2007)).  "In other words, the complaint must allege 'enough facts to state a claim for relief that is plausible on its face.'"  *Garcia*, 2015 U.S. Dist. LEXIS 116733, at *22 (internal quotation omitted) (quoting *Starr v. Sony BMW Music* Entm't, 592 F.3d 314, 321 (2d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  And while the court does not "credit mere conclusory statements or threadbare recitals of a cause of action," the court must construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor.  *Garcia*, 2015 U.S. Dist. LEXIS 116733, at *22-23 (internal citations omitted).  That is, if a fact is susceptible to competing inferences, in evaluating a motion to dismiss, the Court must, as a matter of law, draw the inference that favors the plaintiff so long as it is reasonable.  *Id.*[3]

## ARGUMENT

### A.   The first-filed rule does not apply to class actions with claims entirely based on differing state law.

BMW erroneously asserts that this lawsuit and the *Sharma* lawsuit are identical.  They are similar, but not enough to invoke the first-filed rule.  The 2013 *Sharma* litigation is based on California law, for California vehicles.  This case, involving additional defendants from those in

---

[3] Although Mr. Catalano believes he has addressed the deficiencies raised in BMW NA's first motion to dismiss via the filing of his FAC, if BMW's motion to dismiss is granted, and the reasons therefor can be cured via the addition of factual allegations, Mr. Catalano respectfully requests leave to amend, as leave is "freely" granted where justice so requires. Rule 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

*Sharma*, is based on New York law, for New York vehicles.  The cases do not overlap and are not competing or duplicative in a manner which would permit invocation of the first-filed rule.

The first-filed rule permits transfer of the second case when it contains claims which are encompassed within the first case.  *Lloyd v. J.P. Morgan Chase & Co.*, No. 11 Civ. 9305 (LTS), 2012 WL 3339045, at *1-2 (S.D.N.Y. Aug. 14, 2012).  However, when the second case is based on state law claims which are not asserted in the first, transfer is inappropriate.  *Id.*  By way of example, *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 539-40 (S.D.N.Y. 2013), involved plaintiffs who brought actions under New York law and Connecticut law and sought certification of New York and Connecticut classes, while a plaintiff in another action purchased a product from the same defendant and brought claims under California law.  While the action based on California law sought certification of a multi-state class which could have included New York and Connecticut consumers, no nationwide class had yet been certified in the case based on California law.  In denying defendant's motion to stay, the court held that:

> Although it is typically invoked in non-class contexts, the first-filed rule has been applied to class action suits filed by different plaintiff classes against the same defendant.  In that setting, for the rule to apply, 'identical or substantially similar parties and claims [must be]' present in both courts.

*Quinn*, 958 F. Supp. 2d at 539 (internal citations omitted).

Defendants' argument that there is "substantial overlap" is flawed as different parties and different issues govern Mr. Catalano's case.  First, this lawsuit entails claims grounded in New York law, while Sharma's theories are based purely on California law.  Resolution of the issues in *Sharma* will not be dispositive of the issues to be resolved here.  *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 301 (S.D.N.Y. 2011), *rev'd and remanded*, 533 Fed. Appx. 11 (2d Cir. 2013), *abrogated by Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013)).  Further, BMW ignores the implications of BMW AG and BMW Manufacturing as additional parties to

7

this case.  While BMW NA is one of the defendants in both cases, BMW fails to acknowledge

that the inclusion of BMW AG and BMW Manufacturing will require discovery above and

beyond that requested from BMW NA in *Sharma*, where discovery is closed.  Plaintiff cannot

rely on discovery taken in *Sharma* to prosecute claims that were never asserted, and against

defendants that were never named, in *Sharma.*  Transfer, dismissal, or a stay of this action is

inappropriate even when looking—simply—at the substantially different procedural posture of

both actions.[4]

There is no overlap between Mr. Catalano's case and the *Sharma* case.  There is no risk

of substantial duplication of effort,[5] nor inconsistent rulings.  BMW's first-filed motion should

be denied

> ## B.    Class actions do not require plaintiffs to have the exact same model of cars as the rest of the class members, and standing in class actions is not determined by reference to the named plaintiff, only.

BMW next argues that Mr. Catalano does not have standing to sue BMW Manufacturing

because he did not purchase all of the vehicles identified in the Class definition.   But Mr.

Catalano has standing to assert claims related to models of vehicles he does not own.  "[T]here

are cases conferring Article III standing to pursue claims on behalf of purchasers of products the

---

[4] Moreover, the cases upon which BMW relies are distinguishable.  For example, BMW's reliance on *Tate-Small v. Saks Inc.*, No. 12 CV 1008 (HB), 2012 U.S. Dist. LEXIS 76081 (S.D.N.Y. May 31, 2012) is misplaced.  In holding that the first-filed rule applied, the court in *Tate-Small* found significant that a California and New York class action shared identical claims under the Fair Labor Standards Act ("FLSA").  *Id.* at *10-11.  The FLSA is a federal claim, which would allow individuals from across the country to opt-in to either suit.  But Mr. Catalano alleges no such federal claim that would overlap with the *Sharma* case.  *Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 272-73 (2d Cir. 2008), involved cases raising the *same* insurance coverage issues.  Similarly, *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 245 (E.D.N.Y. 2012), encompassed three actions all asserting misclassification claims on behalf of loan officers under the FLSA—a federal law.  *Catanese v. Unilever*, 774 F. Supp. 2d 684, 688 (D.N.J. 2011), involved two identical *nationwide* class actions on behalf of purchasers of Dryers' ice cream containing alkalized cocoa, asserting that the product had been falsely advertised as "all natural."  If both cases were certified, the named plaintiffs would have been included in the other's class, leading to "substantial duplication of effort" and "potentially inconsistent rulings."  *Id.*

[5] Other methods can substantially save resources and duplication.  For example, per the Court's earlier comments on the topic, Plaintiff's counsel has suggested that the parties enter into a protective order that would allow sharing of documents across the *Catalano* and *Sharma* cases or otherwise share documents produced.

named plaintiffs did not purchase so long as the products are 'sufficiently similar' to those the plaintiffs did purchase." *In re Frito-Lay, N. Am., Inc.*, No. 12-md-2413 (RRM) (RLM), 2013 U.S. Dist. LEXIS 123824, at *41 (E.D.N.Y. Aug. 29, 2013).  Mr. Catalano owns and has been injured as a result of purchasing and incurring repair costs for a vehicle model that is included within the Class Vehicle definition, and all of those vehicles have the same alleged material safety defect.  FAC ¶¶ 13, 78.

As an initial matter, the pleading stage is not the time to analyze whether the named plaintiff can appropriately represent the putative class.  This is an inquiry suited for class certification, not a motion to dismiss.  *See, e.g., Tomassini v. FCA U.S. LLC*, No. 3:14-CV-1226 MAD/DEP, 2015 WL 3868343, at *12 (N.D.N.Y. June 23, 2015).  Article III standing is not the "proper framework" for deciding whether a plaintiff can assert claims based on similar products he or she did not buy.  Rule 23 is.  *Clancy v. Bromley Tea Co.*, No. 12-cv-03003-JST, 2013 U.S. Dist. LEXIS 112722, at *17 (N.D. Cal. Aug. 9, 2013).

Even were the Court to consider standing at this stage of the litigation, BMW is incorrect that Plaintiff cannot represent absent class members who have not purchased or leased the same vehicle as the Plaintiff.  Courts have found that "[f]or those cases that do provide more specific reasoning, the critical inquiry . . . is whether there is sufficient similarity between the products purchased and not purchased."  *Astianu v. Dreyer's Grand Ice Cream, Inc.*, Nos. C-11-22 2910 EMC and C-11-3164 EMC, 2012 U.S. Dist. LEXIS 101371, at *33 (N.D. Cal. July 20, 2012); *DiMuro v. Clinique Labs., LLC*, 572 Fed. Appx. 27, 29 (2d Cir. 2014) (acknowledging previous holding that Plaintiffs had standing to assert claims on behalf of purchasers of other related securities where claims involved nearly identical misrepresentations); *see also Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1005-06 (N.D. Cal. 2012) (analyzing "sufficient

similarity" between products purchased and not purchased by plaintiff and denying defendant's motion to dismiss for lack of standing); *see also Brazil v. Dole Food Co*., No. 12-cv-01831-LHK, 2013 U.S. Dist. LEXIS 136921, at *23-27 (N.D. Cal. Sept. 23, 2013) (denying motion to dismiss on Article III standing: "Allowing [the plaintiff] to proceed with substantially similar claims based on both products he purchased and substantially similar products he did not purchase is a realistic approach that avoids parsing the question of injury too finely.").

Here, Mr. Catalano and the Class's claims are based on the same core factual allegations and causes of action involving an identical defect that is common across all Class Vehicles.[6] The defect, written warranties, nondisclosures, and BMW's failures to provide adequate relief or remedies apply to all Class Vehicles. As a result, to the extent this issue is even appropriate to consider at this nascent stage of the litigation, Plaintiff has standing to pursue claims on behalf of the putative Class.[7]

### C. Plaintiff's CPOW covers defects in the Vehicle's electronics systems, and BMW was required to cover those defects under the terms of the warranty.

#### 1. The CPOW should cover defects in the electronic systems.

All certified, pre-owned BMW vehicles undergo "rigorous inspection by BMW factory-trained technicians." FAC ¶ 16. BMW's CPOW protected Mr. Catalano against defects in *materials* or workmanship, and these defects are to be repaired "without charge for parts or labor." FAC ¶ 45 (emphasis added). The CPOW also states that "[t]his broad coverage includes

---

[6] *See, e.g.,* FAC ¶¶ 1-2 (describing the defect present in all Class Vehicles), 7-8 (BMW has failed to inform customers of the defects and refuses to cover the cost of repairs under its warranties), 34-35 (describing the defect present in all Class Vehicles), 36-38 (describing owner's manuals that come with every Class Vehicle and uniform omissions relating to the defect), 41-43 (describing the written uniform Maintenance Program that comes with every Class Vehicle and uniform omissions relating to the defect), 44-45 (describing the uniform written warranties that apply to Class Vehicles) 46-52, 54-71 (describing BMW's failure to warn, active concealment of the safety defect, damages suffered by members of the Class and its failure to remedy the defect or provide relief to the Class), 77-87 (alleging that class certification is proper).

[7] In the event there is an issue with regard to standing, that issue may be cured at class certification, at which time Plaintiff may substitute in or add plaintiffs who would satisfy standing.

the following parts and systems. . . Electrical." *Id.* BMW refused to cover the repairs to his Vehicle during the CPOW's term. FAC ¶¶ 19, 21, 50. BMW argues that Mr. Catalano's warranty claims should be dismissed because Mr. Catalano did not allege workmanship or materials defects and that the CPOW would not cover the defect because it does not cover water leaks. Both arguments are incorrect.

> ### a. Mr. Catalano's warranty claim concerns design, materials, and manufacturing defects.

As this Court has previously recognized, "[T]here is nothing inconsistent in pleading claims for both design defect and manufacturing defect: a plaintiff is permitted to advance alternative theories of liability for defendant's allegedly wrongful conduct." *Garcia*, 2015 U.S. Dist. LEXIS 116733, at *30 (citations omitted). Further, at the pleadings stage, the distinction between a defect in design and in materials or workmanship is "often a matter of semantics, and thus the key question a court must ask is whether sufficient facts are alleged to assert" defects under the theories the plaintiff identifies. *Id.* at *30-31 (internal quotations omitted).

Although the Court ultimately dismissed plaintiffs' express warranty claim in *Garcia*, the Court described it as a "close call" and Plaintiff's manufacturing defect allegations in this case are more robust than the "offhand references" asserted in *Garcia*. *Id.* at *31, 33. The FAC details how the sunroof drains in Class Vehicles were designed *or* manufactured with improper materials that allow them to become susceptible to clogging (FAC ¶¶ 34, 43), *or* coming loose (*id.* ¶ 2)—which can be caused during the manufacturing process. In addition, Plaintiff expressly alleges that the Class Vehicles were not "manufactured in accordance with BMW AG's intended specifications." *Id.* ¶¶ 35; *see also id.* ¶ 82(h).

Furthermore, unlike plaintiffs in *Garcia*, Plaintiff in this case is also asserting warranty claims based on the "materials" used by Defendants. Such "materials"-related allegations and

warranty claims were never at issue in *Garcia*.  Plaintiff alleges that the *materials* that are part of the electronics described in the FAC are defective in that they are not compatible with the moist conditions of the trunks.  FAC ¶¶ 1, 35, 82(h) (materials fail to prevent moisture intrusion and are otherwise not water-resistant).

Distinguishing whether design, manufacturing, or the materials are the source of the defect is improper at this stage of the litigation.  *See*, *e.g.*, *Haag v. Hyundai Motor Am.,* 969 F. Supp. 2d 313, 316 (W.D.N.Y. 2013) (finding brake defect could arise from design or materials and workmanship, and that it was premature to resolve this issue prior to discovery).   In *Marshall v. Hyundai Motor America*, 51 F. Supp. 3d 451, 467 (S.D.N.Y. 2014), the court also found that allegations of a design and/or a defect arising from materials or workmanship were sufficient to permit the case to proceed.[8]   In this case, whether or not a defect is a design or manufacturing defect is a question of fact not suitable for resolution on a motion to dismiss.  *See, e.g., Alin v. Am. Honda Motor Co., Inc*., No. 08-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) ("At the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives.").

Mr. Catalano's express warranty claim should survive the pleading stage.

---

[8] *Marshall* distinguishes *Cali v. Chrysler Group LLC*, No. 10 CIV. 7606 JSR, 2011 WL 383952, at *2-3 (S.D.N.Y., Jan. 18, 2011) *aff'd*, (2d Cir. 2011) 426 Fed. Appx. 38, a case cited by BMW, because plaintiff in *Cali* asserted defects that were barred by the terms of the warranty.  BMW's reliance on *PPC Broadband, Inc. v. Transformix Engineering Inc.*, No. 5:14-CV-00315 MAD, 2015 WL 339564, at *7-8 (N.D.N.Y. Jan. 26, 2015) should be similarly accorded little weight.  *PPC Broadband* involved a contract which supported a claim for failure to furnish the product as designed and a separate warranty for defects in materials and workmanship.  *PPC Broadband's* ruling is limited to the facts of that case, and does not state any broader principal.

12

**b.      At best, BMW's warranty language is ambiguous, and its terms should be construed against it.**

BMW also tries to make this case about "water leaks" into the interior cabin of the car, such as cosmetic leaks.  That is not what the case is really about.  The defect, as described in the FAC, concerns *electronics* that were placed in a vulnerable position in the Class Vehicles (FAC ¶¶ 1, 2), combined with the ability for sunroof drains to clog and become loose (*id.* ¶¶ 2, 34, 43), and the non-water-resistant materials used, which allowed the *electronics* to fail.  *Id.* ¶¶ 1, 35. That the lowest point of the vehicle is an inherently moist environment in the Class Vehicles should not defeat Mr. Catalano's claim when BMW expressly warrants "the following parts and systems. . . Electrical."  *Id.* ¶ 45.

Furthermore, although Mr. Catalano's warranty claim specifically concerns the defective nature of the electrical system, this is at least a case where there is ambiguity as to whether the warranty covers the defects at issue.  And any ambiguity should be construed against the drafter of the warranty: BMW.  *See, e.g., Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344-CIV, 2014 U.S. Dist. LEXIS 148186, at *22 (S.D. Fla. Oct. 7, 2014); *see also Hunter's Run Stables v. Triple H Constr. Co.*, 938 F. Supp. 166, 170-71 (W.D.N.Y. 1996) (summary judgment improper where warranty was ambiguous as to coverage; the question is ultimately one for the trier of fact).  Dismissal is thus inappropriate in the face of such ambiguity.

13

**D.      Mr. Catalano's implied warranty claim should not be dismissed.**

**1.      Mr. Catalano is the intended beneficiary of the warranty.[9]**

BMW advertised and made representations directly to its consumers, expected that consumers would be the ultimate purchasers of the Class Vehicles, and created warranties for the express benefit of the Class members.  *See, e.g.*, FAC ¶¶ 1, 14-15, 116.  In fact, as alleged in Mr. Catalano's FAC, warranties for the Class Vehicles *include* the Owner's Manual for the vehicle, which provides detailed instructions to consumers about maintenance.  FAC ¶ 36.  BMW expects that purchasers of the Class Vehicles will perform the maintenance as specified in the Owner's Manual as part of its warranty, and if consumers fail to perform necessary maintenance on their Vehicles, BMW's warranty provides that the damage is not covered.  FAC ¶ 45.  This exchange of promises showed that there was a binding agreement between BMW and its ultimate consumers, that the warranty (incorporating instructions owners must follow) was intended for the benefit of the Class members, and the benefit is immediate and not incidental (such as after making a warranty claim, FAC ¶ 34).  *Marshall*, 51 F. Supp. 3d at 469; *see also Praxair, Inc. v. Gen. Insulation Co.*, 611 F. Supp. 2d 318, 330 (W.D.N.Y. 2009) (stating a claim for breach of implied warranty under New York law against manufacturer when purchaser was not in privity with manufacturer but was a third-party beneficiary of a distribution contract between manufacturer and supplier).

Mr. Catalano was the ultimate and intended purchaser of his Vehicle, and BMW's warranties were designed for his benefit.  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 (C.D. Cal. 2010)

---

[9] Mr. Catalano notes that courts have also found that the privity requirement is not applicable when the defect alleged is dangerous.  *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 540-41 (D. Md. 2011) (plaintiff alleged that the vehicles are unsafe).  Mr. Catalano believes that the reasoning in the *Doll* case is more analogous to the complaint in this case than *Dixon v. Ford Motor Co.*, No. 14-CV-6135 (JMA) (ARL), 2015 U.S. Dist. LEXIS 146263, at *14 (E.D.N.Y. Sep. 30, 2015).

(plaintiffs pled that they purchased vehicles from a network of dealers and that they were the intended consumers; "the warranty agreements were designed for and intended to benefit the ultimate consumers only").

### 2. The implied warranty claim is not untimely.

BMW next makes the argument that Mr. Catalano's implied warranty claim is untimely, because it merely involves the discovery of a latent defect. BMW Br. at 18. But this argument ignores the allegations within the four corners of Mr. Catalano's FAC. BMW's *concealment* of the defect and *denial* of warranty claims occurred both before *and* after the purchase of Mr. Catalano's vehicle. FAC ¶¶ 17, 73-76. This scheme is plainly within the statute of limitations. *Marshall*, 51 F. Supp. 3d at 462.

### 3. The Class Vehicles, which contain safety defects, are not fit for the ordinary purpose they were intended.

"[I]n order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended." *Glass v. BMW of N. Am., LLC*, No. CIV.A. 10-5259 ES, 2011 WL 6887721, at *13 (D.N.J. Dec. 29, 2011) (citation omitted). The warranty is not limited to transportation, as contended by BMW, but provides that the vehicle shall be free from substantial and material defects like the one at issue in this case. New York law embraces the idea that a manufacturer impliedly warrants that its vehicle is substantially free from defects. *See McNally v. Chrysler Motors Corp.*, 284 N.Y.S.2d 761, 763 (N.Y. Sup. Ct. 1967) ("The defendant manufacturer impliedly warranted on the manufacture and sale of its vehicle that it was free from latent defects and was reasonably suitable for the ordinary use for which it was manufactured and sold.").

Implied warranties for the Class Vehicles provide that the vehicles must be in a safe condition and substantially free of defects. *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th

15

19, 26 (2007). *Isip* rejected that it was necessary to prove that a vehicle is unable to serve its purpose of providing transportation in order to establish breach of the implied warranty, stating:

> The instruction given by the trial court in this action fairly sets forth the principles in the above-cited authorities. Defining the warranty in terms of a vehicle that is 'in safe condition and substantially free of defects' is consistent with the notion that the vehicle is fit for the ordinary purpose for which a vehicle is used. On the other hand, MERCEDES's attempt to define a vehicle as unfit only if it does not provide transportation is an unjustified dilution of the implied warranty of merchantability. We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose.

*Id*. at 27. Plaintiff expressly stated that the "Class Vehicles and their electrical systems suffered from inherent defects at the time of sale and thereafter [and] are not fit for their particular purpose of providing safe and reliable transportation." FAC ¶ 114.

### 4. BMW violated both the implied warranty of merchantability and particular purpose.

Under New York law, the focus of the inquiry under breach of the implied warranty of merchantability *or* fitness for a particular purpose is on the consumer's expectations when the vehicle "was being used for the purpose and in the manner intended." *Beneway v. Superwinch, Inc.*, 216 F. Supp. 2d 24, 30 (N.D.N.Y.2002); *Derienzo v. Trek Bicycle Corp.*, 376 F. Supp. 2d 537, 570 (S.D.N.Y. 2005). New York requires that "'[t]he product must be fit for the ordinary purposes for which such goods are used.'" *Henry v. Rehab Plus Inc*., 404 F. Supp. 2d 435, 443 (E.D.N.Y. 2005) (citing *Denny v. Ford Motor Co*., 87 N.Y.2d 248 (N.Y. Ct. App. 1995).[10] Here, a vehicle plainly does not meet consumer expectations if it presents a safety hazard and fails or malfunctions due to a latent defect which could cause it to stop operating on the highway, as it did with Plaintiff.

---

[10] *See also Monell v. Scooter Store, Ltd*., 895 F. Supp. 2d 398, 416 (N.D.N.Y. 2012).

The Class Vehicles at issue are not fit for the ordinary purposes for which such vehicles are used due to the safety danger they present to consumers and the electronic failures that occur as a result of water accumulation in Vehicle trunk compartments.  As noted by *Henry*:

> Thus for example, in a tort suit concerning a Ford Bronco, the court concluded that a jury could rationally find that the Ford's use as an off-road vehicle outweighed the risk of injury from "'rollovers,'" but that the vehicle was not safe for its 'ordinary purpose' of road driving.

*Henry*, 404 F. Supp. 2d at 443 (citation omitted).  The implied warranty of fitness is breached in this case because a vehicle with a latent defect which poses a risk of suddenly breaking down on the freeway or in the middle of traffic is not safe for its ordinary purpose of road driving.

### E.    BMW's challenge to Mr. Catalano's fraud-based claims on the basis that it did not have knowledge of the defect fails based upon the plain allegations in the FAC.

BMW next challenges Mr. Catalano's fraud-based claims on the basis that he has not adequately alleged that BMW knew about the Class Vehicles' defects.  Not only has the, BMW-described, "virtually-identical" *Sharma* case rejected a similar argument advanced by BMW, but the allegations in the FAC show that BMW had knowledge and concealed or omitted that knowledge.  *Sharma*, 2015 U.S. Dist. LEXIS 1039, at *5 (N.D. Cal. Jan. 6, 2015).

### 1.    Mr. Catalano's consumer protection claim is not subject to the heightened pleading standards of Rule 9(b).

As an initial matter, BMW conflates the pleading standards applicable to Mr. Catalano's concealment claim, and those applicable to his claim based on the New York consumer safety statute.  Although this Court previously recognized that many states have applied the pleading standards of Rule 9(b) to its consumer protection statutes, *Garcia*, 2015 U.S. Dist. LEXIS 116733, at *48-49, the New York statute is not subject to the heightened Rule 9(b) standard because § 349 "extends well beyond common-law fraud" and a claim under that statute "does not require proof of the same essential elements . . . as common-law fraud." *Pelman ex rel. Pelman*

17

*v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005); *Garcia*, 2015 U.S. Dist. LEXIS 116733, at *63 ("[C]laims brought under [§ 349] are 'not subject to the pleading-with-particularity requirements of Rule 9(b)'") (citation omitted); *see also Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014) (same); *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676, 2012 WL 764199, at *19 (E.D.N.Y. Mar. 5, 2012) ("Pelman. . . establish[es] a categorical rule that [§ 349] claims, regardless of whether they 'sound in fraud,' or are premised on specific misrepresentations rather than an 'advertising scheme,' are not subject to the heightened pleading requirement of Rule 9(b)."); *In re Ford Fusion and C-Max Fuel Economy Litig.,* No. 13-MD-2450 KMK, 2015 WL 7018369, at *17 (S.D.N.Y., Nov. 12, 2015).

Here, Mr. Catalano has pled the required elements necessary for a § 349 claim: (1) that an act or practice was consumer-oriented; (2) that it was misleading in a material respect[11]; and (3) that the plaintiff was injured thereby. *Haag*, 969 F. Supp. 2d at 315. Mr. Catalano's complaint is more than sufficient, because he has alleged "sufficient detail and a plausible narrative for how defendants knew of the . . . defect" (here, complaints, warranty claims, and the TSB issued well-before Mr. Catalano purchased his vehicle) and that BMW "actively and knowingly misrepresented . . . at the time of purchase or lease that the [Class Vehicles]. . . did not contain a material defect, were in good working order, not defective[,] and merchantable" (here, BMW's safety claims, as well as its assurances under the CPOW). *Szymczak v. Nissan N. Am., Inc.*, No. 10-CV-7493, 2011 WL 7095432, at *16 (S.D.N.Y. Dec. 16, 2011); *see also Marshall*, 51 F. Supp. 3d at 460-61; FAC ¶¶ 1-25, 34-72.[12]

---

[11] An omission may form the basis for a Section 349 claim. *Chiarelli v. Nissan North Am., Inc.*, No. 14-CV-4327 NGG VVP, 2015 WL 5686507, at *11 (E.D.N.Y., Sept. 25, 2015); *see also Garcia*, 2015 U.S. Dist. LEXIS 116733, at *63.

[12] Note 11 of the opposition argues that Plaintiff has not identified the advertising he relies on, disregarding the concealment claim and the specific allegations concerning BMW's warranty and advertising language. Thus, this argument by BMW is specious.

## 2.    Mr. Catalano adequately pleads BMW's knowledge of the defect.

Furthermore, Plaintiff has adequately pled BMW's knowledge of the defect with respect to his fraudulent concealment claim, and in a manner that does not depend simply on BMW's design and manufacturing of the Class Vehicles.  For example:

- BMW was aware of the defect due to numerous NHTSA complaints.  FAC ¶¶ 3, 52;

- BMW's knowledge of the defect is established by the Technical Service Bulletins it issued to its dealers describing the defect.  *Id.* ¶¶ 4-8;

- BMW was aware of customer complaints about the defect.  *Id.* ¶ 53;

- BMW was aware of the defect through repair invoices and warranty claims.  *Id.* ¶¶ 61, 64.

Thus, BMW erroneously argues that Plaintiff does not specifically allege its knowledge of the defect.  Numerous cases have found that knowledge was sufficiently pled based on allegations that defendant knowingly sold a defective product, while intentionally concealing this information from consumers, and where internal documents demonstrated defendant's knowledge.[13]  *See, e.g., Luppino v. Mercedes-Benz USA*, LLC, No. CIV. 09-5582 DMC JAD, 2010 WL 3258259, at *7-8 (D.N.J. Aug. 16, 2010); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 527-28 (D.N.J. 2008) (finding that knowledge was sufficiently alleged where Volkswagen

---

[13] The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (5) damages. *Woods v. Maytag Co*., 807 F. Supp. 2d 112, 124 (E.D.N.Y. 2011); *See Nasaba Corp. v. Harfred Realty Corp*., 287 N.Y. 290, 293, 39 N.E.2d 243 (1942) ("Concealment with intent to defraud of facts which one is duty-bound in honesty to disclose is of the same legal effect and significance as affirmative misrepresentations of fact."); *State v. Gen. Motors Corp*, 466 N.Y.S.2d 124, 127 (N.Y. 1983) (recognizing a car manufacturers duty to disclose defects to consumers for the purposes of a fraudulent concealment claim).

did not disclose design defects to consumers, where defects manifested after the warranty expired, and that class members were induced to lease and purchase the defective vehicles as a result of defendant's nondisclosure); *Strzakowlski v. Gen. Motors Corp.*, No. CIV.A. 04-4740, 2005 WL 2001912, at *5 (D.N.J. Aug. 16, 2005) (aware of defects in engine design, concealed the information from consumers, and used repair procedures covered by warranty to hide manifestations of the defect); *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 126 (E.D.N.Y. 2011).

Moreover, consumer complaints to NHTSA (here directed to BMW as well) are sufficient to impute knowledge. *In re MyFord Touch*, 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014) ("That there were such complaints is substantiated by the NHTSA complaints identified by Plaintiffs . . . Accordingly, for 12(b)(6) purposes, given all reasonable inferences must be drawn in Plaintiffs' favor, the Court finds that Plaintiffs have adequately pled knowledge on the part of Ford."); *MacDonald v. Ford Motor Co.*, No. 13-cv-02988-JST, 2014 U.S. Dist. LEXIS 44858, at *9-10 (N.D. Cal. Mar. 31, 2014) (citing to consumer complaints and complaints reported to NHTSA, among other things); *Grodzitsky v. Am. Honda Motor Co. Inc.*, No. 2:12-cv-1142-SVW-PLA, 2013 U.S. Dist. LEXIS 82746, at *20 (C.D. Cal., June 12, 2013) (plaintiffs provided a "sampling" of NHTSA complaints: "Taken together, these allegations support a plausible inference that Defendant saw and reviewed the specific complaints that were made about the [defect]."); *Banks v. Nissan N. Banks v. Nissan N. Am., Inc.*, No. C 11-2022 PJH, 2012 U.S. Dist. LEXIS 37754, at *1-3 (N.D. Cal. Mar. 20, 2012).

And case authority holds that Technical Service Bulletins describing the defect demonstrate that BMW has knowledge of the defect. *Sharma*, 2015 U.S. Dist. LEXIS 1039, at

*5; *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1093-94 (N.D. Cal. 2014); *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 384 (D.N.J. 2014).[14]

### F.    Mr. Catalano states a valid claim for declaratory relief.

BMW is incorrect that Plaintiff's declaratory relief cause of action merely duplicates his other legal theories. Plaintiff's declaratory relief claim is brought on behalf of a putative class pursuant to Rule 23(b)(2), which permits classes to be certified seeking declaratory and injunctive relief (whereas Plaintiff's other claims are brought pursuant to Rule 23(b)(3)). Under Rule 23(b)(2), a class action may be maintained if: "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Id.*; *see also In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 583, 595-613 (N.D. Cal. 2010) (certifying 23(b)(2) class for injunctive relief, and 23(b)(3) class for damages); *Schwarm v. Craighead*, 233 F.R.D. 655, 663-65 (E.D. Cal. 2006) (certifying 23(b)(2) class for injunctive and declaratory relief while certifying 23(b)(3) class for claims for damages). It is common for courts to certify classes or subclasses for injunctive or declaratory relief under Rule 23(b)(2) in product defect cases. *See*, *e.g.*, *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 483-84, 487 (N.D. Ill. 2009), *aff'd*, *Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010).

Declaratory and injunctive relief are both proper where the claims are necessary to accomplish full and adequate relief. Furthermore, significant consideration is given to declaratory and injunctive relief under New York law when such relief is appropriate in light of

---

[14] This case is not at all analogous to the decision that BMW relies on, *McQueen v. BMW of North America, LLC*, No. CIV.A. 12-06674 SRC, 2014 WL 656619, at *4-5 (D.N.J. Feb. 20, 2014). The only non-conclusory allegation of knowledge in *McQueen* was that BMW received notice of approximately ten consumer complaints regarding failures of class (and non-class) vehicles. Plaintiff otherwise simply argued that since the vehicle at issue was defectively designed, BMW must know of this. The plaintiff in *McQueen* never plead additional facts showing how it acquired this knowledge. *Id.* In contrast, as described above, Plaintiff in this case pled ample facts establishing that BMW was aware of the defect well-before Plaintiff purchased his Vehicle.

all factors a court must consider at the time of class certification. *Jermyn v. Best Buy Stores, L.P.,* 256 F.R.D. 418, 434 (S.D.N.Y. 2009). New York case law requires a detailed analysis at the time of class certification to determine whether it is appropriate to certify declaratory or injunctive relief theories. *Spagnola v. Chubb Corp*., 264 F.R.D. 76, 97-98 (S.D.N.Y. 2010).

BMW seeks to prematurely foreclose consideration of Plaintiff's declaratory and injunctive relief claims, but these inquiries are more appropriate at class certification and after sufficient factual development and discovery has taken place.[15] Dismissal is improper.

### G.   Mr. Catalano's injunctive relief claim is not preempted.

Plaintiff contends that BMW has already identified the defects alleged in the FAC and issued an undisclosed TSB to various authorized service providers on how to address the defects. *See*, *e.g.*, FAC ¶¶ 4-5, 70-71. BMW already regularly makes these repairs. However, despite issuing service bulletins and being on notice of the defect from numerous consumer complaints, dealership repair orders, and other sources, BMW has not: offered all of its customers a suitable repair, modification, or replacement of the defective components free of charge; nor offered to reimburse Class members who incurred costs relating to flooding and the subsequent damage and failure of the electronic component parts located in the Class Vehicles' trunks. *Id.* at ¶¶ 145-152. Rather than allowing BMW to continue concealing this defect and forcing BMW owners in New York to pay for the repairs when the problem manifests, Plaintiff is requesting relief, be it

---

[15] The case BMW primarily relies on, *Maniscalco v. Brother International Corporation*, 627 F. Supp. 2d 494 (D.N.J. 2009), was decided under the New Jersey Consumer Fraud Act ("NCFA"), *not New York law*. The sole reason for the dismissal of the declaratory relief claim in *Maniscalco* was plaintiff's failure to identify the requirement that the court make a declaration of liability as a prerequisite for finding liability under the NCFA. *Id.* at 505; *see also Thunander v. Uponor, Inc*., 887 F. Supp. 2d 850, 878 (D. Minn. 2012) (dismissal of declaratory relief claim since Plaintiff could not identify a pending injury); *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc*., 852 F. Supp. 2d 925, 938 (S.D. Ohio 2012) (Plaintiff conceded that a declaration would not solve the controversy between the parties). Such a situation has not been identified in this case, and instead, Plaintiff is entitled to proceed with theories which may be the basis of an independent certification order, based on the factors identified in New York decisions considering the question. In addition, unlike here, *Maniscalco* involved dismissal of a declaratory relief claim at the time of a summary judgment motion in a trademark infringement action.

through the establishment of a fund or a program, where BMW would make the necessary repairs and pay for them.

BMW claims that Plaintiff's request for injunctive relief is barred by federal conflict preemption because the National Traffic and Motor Vehicle Safety Act ("Safety Act"), 49 U.S.C. §§ 30101, *et seq*., vests vehicle safety defect investigation and recall authority solely with NHTSA.   Conflict preemption exists "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. Gen. Elec. Co*., 496 U.S. 72, 79 (1990).   It is a demanding standard, as courts will not seek out conflicts between state and federal regulation where none clearly exists. *Wyeth v. Levine*, 129 S. Ct. 1187, 1199 (2009).   As the party claiming preemption, BMW bears the burden of showing that this demanding standard is met. *Barnes ex rel. Barnes v. Koppers, Inc*., 534 F.3d 357, 362 (5th Cir. 2008); *Village of DePue, Ill. v. Exxon Mobil Corp*., 537 F.3d 775, 786 (7th Cir. 2008).

### 1.      BMW has not demonstrated any actual conflict.

BMW asserts that NHTSA has exclusive authority to impose a duty to recall a motor vehicle.   BMW makes this assertion while seemingly ignoring case law and Advisory Opinions from NHTSA on state-law preemption issues. *See*, *e.g.*, *Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 959 (N.D. Cal. 2004) (plain language of 49 USCS §30103(b)(1) indicated that states were not precluded from enforcing motor vehicle safety laws, so long as those laws did not impose a standard different from one explicitly provided in the Safety Act, and it did not appear that Congress intended to supplant all state regulation of motor vehicle safety); Opinion Letter from Frank A. Berndt, Acting Chief Counsel of the NHTSA, to Richard Gross (Apr. 13, 1979) (implementation of the Safety Act "explicitly preserves the rights and remedies available to consumers under State law."); Opinion Letter from Frank A. Berndt, Chief Counsel of the

23

NHTSA, to Patricia A. Simko, Assistant Attorney General of the State of New York (Feb. 3, 1981) ("To the extent that the State law imposes any obligations that are not required by the Safety Act, they do not require a manufacturer to violate the Safety Act, and it is therefore possible to comply with those additional requirements without violating Federal law.").  "[T]o constitute an actual conflict, the state law at issue must conflict with the intent of Congress in a specific and concrete way." *Kent v. Daimler Chrysler Corp.*, 200 F. Supp. 2d 1208, 1217 (N.D. Cal. 2002) (emphasis added).

Congress's primary intent in passing the Safety Act is articulated most clearly "in the first section of the Act itself: 'the purpose of this chapter is to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents.'" *Chrysler Corp. v. Tofany*, 419 F.2d 499, 508 (2d Cir. 1969).  BMW has not shown that the relief requested in this lawsuit would frustrate Congress's intent to reduce accidents.[16]  Nor has BMW pointed to a specific safety requirement or NHTSA regulation that would conflict with Mr. Catalano's claims.  *See Kent*, 200 F. Supp. 2d at 1218 ("Plaintiff does not challenge a safety standard or any NHTSA regulation, and Defendant

---

[16] While Congress also intended to promote uniformity, uniformity is merely a secondary objective of the Safety Act. *See Tofany*, 419 F.2d at 511; *Buzzard v. Roadrunner Trucking, Inc.*, 966 F.2d 777, 783-84 (3d Cir. 1991); *Chamberlan*, 314 F. Supp. 2d at 962-63. Thus, BMW's argument that Plaintiff's claims would undermine the uniformity Congress sought to promote in passing the Safety Act is misplaced since "some negative effect on uniformity is not sufficient to trigger preemption of State law under the Safety Act." *Buzzard*, 966 F.2d at 783-84 ("It remains our view. . . that uniformity was merely a secondary concern to Congress when it enacted the Safety Act. Accordingly, uniformity cannot take precedence over Congress's primary goal of safety, nor can it defeat Congress' intent, as set out in section 1397(k) of the Act, to permit state common law to develop more stringent design requirements in the interest of increased safety. Strict uniformity may even interfere with the safety goal, thus frustrating the Act's purpose. Because of the differences in geography and population among the states, varying standards and requirements may be necessary to achieve the same level of safety in different states."). *Cf. Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 443 (1978) ("[T]he Court has been most reluctant to invalidate under the Commerce Clause state legislation in the field of safety where the propriety of local regulation has long been recognized. In no field has this deference to state regulation been greater than that of highway safety regulation.") (internal citations omitted).

has not identified any specific conflict between this action and the on-going NHTSA investigation of the same problem"). BMW has not demonstrated any actual conflict.[17]

### 2.     There is a presumption against preemption.

BMW's burden is especially heavy in this case because it must overcome a presumption against preemption. The presumption arises where, as in this case, Congress has legislated "in a field which the States have traditionally occupied." *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 439 (2002); *see also Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998) (applying presumption to Safety Act). BMW cannot carry that heavy burden.[18]

Here, BMW only argues that Plaintiff's injunctive relief claim would undermine and frustrate the Safety Act's objectives of protecting the public through the remedies in the statute. But that is not the case, because in order to find conflict preemption, "[t]here must be 'clear evidence' of such a conflict," and there is no "clear evidence," here. *Chamberlan*, 314 F. Supp. 2d at 957 (quoting *Geier v. Am. Honda Co.*, 529 U.S. 861, 884 (2000)). "Speculative or hypothetical conflict is not sufficient: only State law that actually conflicts with federal law is preempted." *Chamberlan*, 314 F. Supp. 2d at 957 (internal quotations omitted). There is a presumption against preemption because products liability and motor vehicle safety "is an area of traditional State police power." *Chamberlan*, 3l 4 F. Supp. 2d at 958. And, given this presumption against preemption, even "consider[ing] Plaintiffs' request for a recall separately from Plaintiff's other request for relief for the purpose of [the Court's] preemption analysis. . .

---

[17] For example, BMW does not explain how New York's General Business Law, permitting an injunction to be issued to prohibit unlawful acts or practices, would conflict with federal law. N.Y. Gen. Bus. Law § 349 (h).

[18] *Cf. Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 443 (1978) ("[T]he Court has been most reluctant to invalidate under the Commerce Clause state legislation in the field of safety where the propriety of local regulation has long been recognized. In no field has this deference to state regulation been greater than that of highway safety regulation." (internal citations omitted)).

[BMW] has not demonstrated that an actual conflict exists." *In re Toyota*, 754 F. Supp. 2d at 1196 (C.D. Cal. 2010).[19]

The Safety Act does not vest a federal agency with plenary and exclusive authority to regulate the subject matter in question (motor vehicle safety and defects), and its structure does not suggest that Congress intended for remedies to be exclusive. On the contrary, "the Supreme Court has suggested that the [Safety Act] was not 'intended to centralize all authority over the regulated area in one decision maker: the Federal Government.'" *Littel v. Bridgestone/Firestone, Inc.*, 259 F. Supp. 2d 1016, 1024 n.l l (C.D. Cal. 2003) (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 286 (1995) (Safety Act did not preclude state-law claims that trailers were defective by not including anti-lock brakes)).

## CONCLUSION

For the foregoing reasons, BMW's motion to dismiss should be denied.

Dated:  January 22, 2016.               By:  /s/ Amy E. Keller
                                                  Amy E. Keller

                                         WEXLER WALLACE LLP
                                         Edward A. Wallace
                                         Amy E. Keller
                                         eaw@wexlerwallace.com
                                         aek@wexlerwallace.com
                                         55 West Monroe Street, Suite 3300
                                         Chicago, Illinois 60603
                                         Telephone:     (312) 346-2222
                                         Facsimile:     (312) 346-0022

---

[19] Case law cited by BMW is inapposite. For example, *In re Bridgestone/Firestone, Inc.*, 153 F. Supp. 2d 935, 944 (S.D. Ind. 2001) turned largely on the court's conclusion that the presumption against preemption did not apply in *that* case, which cited to *United States v. Locke*, 529 U.S. 89 (2000), a *field preemption case*, and which did not displace the presumption for purposes of conflict preemption. *See UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189, 1194-95 (9th Cir. 2007); *Bussian v. DaimlerChrysler Corp*. 411 F. Supp. 2d 614, 628-629 (M.D.N.C. 2006) (discussing primary jurisdiction doctrine applicable when NHTSA is conducting an ongoing investigation); *Cox House Moving, Inc. v. Ford Motor Co*., No. CIVA 7:06-1218 HMH, 2006 WL 2303182, at *9 (D.S.C., Aug. 8, 2006) (discussing recall remedy only).

KERSHAW, CUTTER & RATINOFF LLP
William A. Kershaw
Stuart C. Talley
Ian J. Barlow
wkershaw@kcrlegal.com
stalley@kcrlegal.com
ibarlow@kcrlegal.com
401 Watt Avenue
Sacramento, California 95864
Telephone:       (916) 448-9800
Facsimile:       (916) 669-4499

THE LAW OFFICES OF STEPHEN M. HARRIS, P.C.
Stephen M. Harris
stephen@smh-legal.com
6320 Canoga Avenue, Suite 1500
Woodland Hills, California 91367
Telephone:       (818) 924-3103
Facsimile:       (818) 924-3079

THE LAW OFFICES OF ROBERT L. STARR
Robert L. Starr
robert@starrlawmail.com
23277 Ventura Boulevard
Woodland Hills, California 91364
Telephone:       (818) 225-9040
Facsimile:       (818) 225-9042

THE LAW OFFICES OF JOSEPH R. SANTOLI
josephsantoli@aol.com
340 Devon Court
Ridgewood, New Jersey 07450
Telephone:       (201) 926-9200
Facsimile:       (201) 575-2184

*Attorneys for Plaintiff and the Putative Class*

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed using this Court's CM/ECF

notification service, which sent notification of such filing to all counsel of record on January 22,

2016.

<u>/s/ Amy E. Keller</u>

Amy E. Keller
