USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 1, 2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                   :

GEORGE CATALANO, on behalf of himself and  :
all others similarly situated,                :

                  Plaintiff,         :

                         :        15-cv-4889 (KBF)

          -v-               :

                         :     OPINION & ORDER

BMW OF NORTH AMERICA, LLC, a New Jersey  :
limited liability company; BAYERISCHE     :
MOTOREN WERKE AKTIENGESELLSCHAFT, a:
corporation organized under the laws of the    :
Federal Republic of Germany; and BMW      :
MANUFACTURING CO., LLC, a Delaware limited:
liability company,                   :

                         :

               Defendants.    :

                         :

------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

      Plaintiff George Catalano ("Catalano") commenced this action in June 2015, on behalf of himself and all others similarly situated, alleging that defendants BMW of North America, LLC ("BMW NA"), Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), and BMW Manufacturing Company, LLC ("BMW MC") (collectively, "BMW") fraudulently concealed and failed to address alleged safety defects present in certain BMW motor vehicle models.  The allegedly defective vehicle models include all BMW-designed X5 series vehicles from 2000 to 2008, X3 series vehicles from 2004 to 2010, and 5 series vehicles from 2004 to 2010 (the "Class Vehicles").  Catalano alleges that the Class Vehicles are defective because electronic components are located in trunk and cargo areas that make them

prone to damage and failure due to water exposure, a problem compounded by the fact that sunroof drainage tubes are prone to clogging and rupturing, which causes leakage into trunk areas. Based on the existence of the alleged defects and BMW's concealment of and failure to disclose them, Catalano's First Amended Complaint ("FAC") alleges eight claims under New York law for breach of an express warranty, the implied warranties of merchantability and fitness for a particular purpose, and contract/common law warranty, fraudulent concealment, and violation of N.Y. GBL § 349; the FAC seeks compensatory and punitive damages and injunctive and declaratory relief.

Pending before the Court is BMW's motion to dismiss, stay, or transfer this action under the first-filed rule, on the ground that a substantially similar suit, <u>Sharma v. BMW of North America, LLC</u>, Civil Action No. 3:13-cv-02274-MMC (N.D. Cal.), was instituted earlier in time in the United States District Court for the Northern District of California. BMW's motion, in the alternative, seeks dismissal of this action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); in that section of its motion, BMW asserts one or more particular grounds for dismissal of each of Catalano's various claims. (ECF No. 56.)

For the reasons set forth below, BMW's motion is GRANTED IN PART AND DENIED IN PART. The Court concludes that the first-filed rule does not apply under the circumstances presented here; for different reasons, the Court dismisses all claims against BMW MC, and also dismisses all claims—except for the N.Y. GBL § 349 claim—against the remaining two defendants, BMW NA and BMW AG.

BMW MC is dismissed from this action because Catalano lacks Article III standing to pursue claims against it.  Catalano's express warranty and contract/common law warranty claims are dismissed because the FAC plausibly alleges only a design defect, which is not covered by the warranty, the only written contract that the FAC alleges.  Catalano's implied warranty claims are dismissed primarily because the FAC fails to allege privity with defendants and the claims are barred by the applicable statute of limitations.  Catalano's fraudulent concealment claim is dismissed because the FAC fails to allege a strong inference of fraudulent intent as required under Rule 9(b); as explained below, however, the Court will allow Catalano an opportunity to replead solely this claim against BMW NA and BMW AG.  Finally, Catalano's claim for injunctive relief is dismissed because an injunction is a remedy, not a separate cause of action, and his claim for declaratory relief is dismissed because it is duplicative of his legal claims.

I.    BACKGROUND

    A.    <u>Factual Background</u>[1]

        1.    <u>Parties</u>

Plaintiff George Catalano is a citizen of Connecticut who purchased a pre-owned 2007 BMW 530xi wagon, which is described as a "sport wagon", in New York in 2010.  (First Am. Compl. ("FAC") ¶ 13, ECF No. 40.)  The FAC does not indicate from whom Catalano purchased his vehicle.  Catalano's vehicle came with a Certified Pre-Owned Warranty, the terms of which are detailed below.  (FAC ¶ 13.)

---

[1] The following facts are those alleged or incorporated by reference in the FAC.  The Court here recounts only those facts relevant to resolving the pending motion to dismiss.

Catalano seeks to certify a class of plaintiffs that includes "[a]ll persons who purchased or leased any BMW X5 series vehicles, X3 series vehicles, and 5 series vehicles in New York."  (FAC ¶ 78.)[2]

BMW AG is a German corporation that designs and manufactures motor vehicles, parts, and other products for export and sale throughout the world, including throughout the United States and the State of New York.  (FAC ¶¶ 27, 29.)  BMW NA is a Delaware limited liability company authorized to conduct business in New York; it is an indirect wholly-owned subsidiary of BMW AG.  (FAC ¶¶ 26-27.)  During the period relevant to the FAC, BMW NA was engaged in the business of "marketing, importing, distributing, warranting, and selling automobiles and other motor vehicles and motor vehicle components throughout the United States," including Class Vehicles in New York.  (FAC ¶ 30.)  BMW MC is a Delaware limited liability company with its principal place of business in South Carolina; it is also a wholly-owned subsidiary of BMW AG.  (FAC ¶ 28.)  BMW MC was the sole global producer of BMW X3 and X5 model vehicles sold in the State of New York.  (FAC ¶ 31.)  Catalano alleges that his vehicle was designed and manufactured by BMW AG and was sold, distributed, advertised, marketed and warranted by BMW NA.  (FAC ¶ 13.)

> ### 2.   The Alleged Defects

The FAC alleges that all of the Class Vehicles "contain serious design, manufacturing, or material defects that significantly impact the safety and value of

---

[2] The Court presumes that Catalano's putative class is limited to owners and lessees of the specific model-years that he lists earlier in the FAC when defining the term "Class Vehicles."  (See FAC ¶ 34.)

[the] vehicles." (FAC ¶ 1.)  In particular, the FAC alleges that the Class Vehicles were "designed or manufactured so that certain vital electrical components are often located in the lowest part of the vehicles and are made with or housed in materials that fail to prevent water or moisture intrusion," creating the potential for the vehicles to "lose power while in operation, experience an electrical malfunction, and/or fail to start" and making them prone to water damage through the "normal and ordinary use" of the vehicles.  (FAC ¶ 1; see also FAC ¶¶ 34-35.) Catalano further alleges that the Class Vehicles were "designed or manufactured so that drainage tubes used to drain water away from the vehicles' sunroofs are located in close proximity to the vital electrical equipment often located in the lowest point of the Class Vehicles" and that the sunroof drains are prone to become clogged with dirt, debris, leaves, and other naturally-occurring materials with no warning to owners.  (FAC ¶ 2; see also FAC ¶ 34-35.)  Once clogged, the drainage tubes come loose or leak into the trunks of the Class Vehicles, saturating the trunks and causing vital electronic components to short and shut down.  (FAC ¶ 2.) Catalano alleges that consumers have described these defects as causing an "electronics swimming pool" and "puddl[ing]" in the spare tire compartment.  (FAC ¶ 51.)

     In addition to broadly describing how the alleged defects affect all of the Class Vehicles, the FAC also describes Catalano's own experience with and damages caused by the defects.  The FAC alleges that, in June 2012, approximately two years after Catalano's purchase, his vehicle experienced an electrical failure

while he was driving with his wife—the car shut down completely while he was driving on a four-lane divided highway.  (FAC ¶ 17.)  No personal injuries resulted from this incident.  (See FAC ¶ 17.)  Catalano brought his vehicle to a BMW dealership, where he was informed that it was still covered by BMW NA's Certified Pre-Owned Warranty.  (FAC ¶ 18.)  The dealership found that nearly two inches of standing water had accumulated near electrical components in the trunk underneath the vehicle's spare tire compartment.  (FAC ¶ 19.)  The dealership made certain repairs to replace the corroded electronics and drain water from around the electronic modules and discovered that water had infiltrated the trunk as a result of clogged sunroof drain tubes.  (FAC ¶ 20.)  BMW NA refused to cover the repairs under Catalano's Certified Pre-Owned Warranty; as a result, Catalano incurred nearly $2,000 in repair costs.  (FAC ¶ 21.)  Catalano alleges that the dealership made no attempts to move the electronics from the lowest portion of the trunk compartment or make the compartment or the electronic components contained therein watertight.  (FAC ¶ 22.)  He alleges that the defects in his vehicle persist. (FAC ¶ 22.)

> 3.   Allegations Relating to BMW's Knowledge of Defects

Catalano alleges that defendants knew or should have known of the Class Vehicles' defects based on several sources of information.  First, he alleges that BMW was aware or should have been aware of numerous complaints filed with the National Highway Traffic Safety Administration ("NHTSA") as early as 2008 that detailed damage caused by the placement of vulnerable electronics in the bottom of cargo areas.  (FAC ¶¶ 3, 52.)  Second, Catalano alleges that Class Vehicle owners

made complaints describing these defects on various forums dedicated to car safety. (FAC ¶ 53.)  Third, Catalano alleges that BMW was made aware of the defects by virtue of repair invoices, warranty claims and repair orders from BMW dealerships. (FAC ¶ 61.)

Catalano further alleges that defendants affirmatively demonstrated their knowledge of the defects by issuing several Technical Service Bulletins ("TSBs") relating to Class Vehicles to various authorized service providers—but not to vehicle owners or the public—between 2004 and 2009.  (FAC ¶¶ 4-9, 61, 70-71.)  For instance, Catalano alleges that in August 2009, defendants issued a TSB that stated:

> Water ingress into the luggage compartment may cause various electrical problems or faults associated with the MPM (Micro Power Module); PDC (Park Distance Control); M-ASK (Multi-Audio System Controller); CCC (Car Communication Computer); CID (Control Information Display); TCU (Telematics Control Unit); LOGIC-7 (Top Hi-Fi); RDC (Tire Pressure Monitor) or SDARS (Satellite Radio Receiver) control modules.  In most cases, the water collects in the spare wheel recess.

(FAC ¶ 4.)  Catalano alleges that this TSB also instructed authorized service technicians to replace water damaged modules, relocate electronics to another less vulnerable location of the vehicle's trunk, and to place a permanent placard in the trunk warning owners to avoid allowing liquids into this area of the vehicle.  (FAC ¶ 6.)  Catalano alleges that he did not know of the alleged defects until around June 2012, that the existence of the alleged defects would be considered material by a reasonable consumer when deciding whether to purchase a vehicle, and that he

would not have purchased one of defendants' vehicles if he had been aware of the defects at the time of purchase.  (FAC ¶¶ 11-12, 23, 49, 58.)

    4.   <u>Warranties and Representations/Omissions</u>

All Class Vehicles come with a New Vehicle Limited Warranty, extended limited warranty, or Certified Pre-Owned Warranty.  (FAC ¶ 44.)  Each of these warranties covers "defects in materials or workmanship" and states that covered defects will be repaired "without charge for parts or labor."  (FAC ¶ 45.)  The Certified Pre-Owned Warranty also states that the coverage for defects in materials or workmanship includes, <u>inter alia</u>, electrical parts and systems.  (FAC ¶ 45.)  Both the New Vehicle Limited Warranty and the Certified Pre-Owned Warranty expressly exclude coverage for damage caused by problems related to maintenance. (FAC ¶ 45.)

Every Class Vehicle comes with an owner's manual that contains information on maintenance and other important instructions.  (FAC ¶ 36.)  The manual is expressly made part of the vehicle's warranty.  (FAC ¶ 36.)  Each owner's manual contains numerous recommendations, warnings and precautions relating the operation and use of the Class Vehicles.  (FAC ¶ 37.)  Although the manuals contain various details related to the proper use of the trunk, the manuals do not inform consumers of risks to electrical equipment if water or other liquids enter the trunk. (FAC ¶¶ 38-39.)  The manuals also provide detailed instructions concerning the safe operation of vehicle sunroofs, but say nothing about the drainage tubes, the fact that the tubes are prone to clogging, or that such clogging could result in damage to a vehicle's electronic equipment.  (FAC ¶¶ 40, 65.)

Catalano alleges that in addition to providing owner's manuals, BMW NA also includes a written Maintenance Program with all Class Vehicles that is designed to "maximize vehicle safety, reliability and resale value by minimizing breakdowns resulting from wear and minimizing cost." (FAC ¶ 41.) The Maintenance Program lists various tasks and inspections that vehicle owners should perform on a regular basis, but does not contain any warning that critical electronic equipment is vulnerable to water damage or that the vehicles' sunroof drainage tubes should be cleaned or can become clogged and lead to damage to electronic equipment. (FAC ¶¶ 42-43.) Catalano alleges that BMW expressly represented that the owner's manuals and Maintenance Program "provided complete and accurate information concerning the risks associated with their vehicles and the maintenance that should be performed in order to ensure that the vehicle could be operated safely." (FAC ¶ 54.)

Catalano also alleges that, to aid in his decision whether to purchase his vehicle, he reviewed and relied on BMW NA's various marketing and advertising materials, including information provided on BMW NA's website. (FAC ¶ 14.) At around the time that Catalano made his purchase, BMW NA's website advertised that Certified Pre-Owned vehicles would be in "pristine condition," have an "amazing protection plan," and be a "great value." (FAC ¶ 15.) The website also stated that "every Certified Pre-Owned BMW is rigorously inspected" and "one of the smartest buys on the road today." (FAC ¶ 15.) The website goes on to explain that, to be eligible for the Certified Pre-Owned Vehicle Program, a vehicle must

meet certain mileage requirements and pass an extensive examination by BMW factory-trained technicians.  (FAC ¶ 16.)  Catalano alleges that despite BMW NA's safety claims on its website, the Class Vehicles "present a safety hazard and are unreasonably dangerous to consumers because of the danger of catastrophic electrical system failure or fire hazards as a result of the vulnerable location of its key electrical components."  (FAC ¶ 47.)

Catalano alleges that the class members could only become aware of the described defects after purchasing or leasing Class Vehicles.  (FAC ¶ 55.)  Catalano alleges that BMW intentionally misrepresented, either affirmatively or by omission, that the Class Vehicles were free from defects, and took no action to adequately warn about or remedy the defects; he alleges that BMW instead concealed and failed to disclose the defects and blamed the issues on customers' failure to properly maintain their vehicles and/or "outside influences."  (FAC ¶¶ 61-63, 68-69.)

B.   <u>Procedural Background</u>

Catalano commenced this action by filing his initial complaint on June 23, 2015.  (ECF No. 1.)  After BMW NA moved to dismiss the complaint (ECF No. 27), Catalano filed the First Amended Complaint on November 3, 2015 (ECF No. 40). On behalf of Catalano and the putative class of BMW owners and lessees of Class Vehicles, the FAC alleges claims for fraudulent concealment, violation of New York's consumer protection statute, N.Y. GBL § 349, breach of the implied warranty of merchantability under N.Y. U.C.C. § 2-314, breach of the implied warranty of fitness for a particular purpose under N.Y. U.C.C. § 2-315, breach of express

warranty, breach of contract/common law warranty, and claims for injunctive and declaratory relief.  (FAC ¶¶ 88-157.)[3]

As stated above, Catalano seeks to certify a class that includes all persons who purchased or leased any of the Class Vehicles in New York.  (FAC ¶ 78.)  The FAC also identifies two subclasses that pertain to certain claims.  First, a "Warranty Subclass" for all persons who purchased or leased a Class Vehicle and "who submitted their vehicle for repairs pursuant to TSBs under the vehicle's warranty for water damage to any electronic components located in the lowest portion of the trunk compartment and incurred out of pocket expenses as a result of BMW NA's refusal to make repairs" under the warranty.  (FAC ¶ 79.)  The Warranty Subclass pertains to the FAC's breach of express warranty and contract/common law warranty claims.  (FAC ¶¶ 136, 140.)  Second, the FAC identifies an "Injunctive Relief Subclass" for all persons who purchased or leased a Class Vehicle for which the electronics are located in the lowest portion of the vehicles' trunks.  (FAC ¶ 79.)  The Injunctive Relief Subclass is relevant only to Catalano's claim for injunctive relief.  (FAC ¶ 152.)

As discussed above, the FAC alleges that BMW fraudulently concealed and failed to address alleged safety defects present in certain BMW vehicle models relating to electronic modules or components located in trunk and cargo areas that are prone to damage and failure due to water exposure, a problem exacerbated by defective sunroof drainage tubes.  Nearly a year before Catalano filed his initial

---

[3] The FAC asserts federal subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 and the Class Action Fairness Act.  28 U.S.C. § 1332(d)(2).

complaint in this action, on July 25, 2014, plaintiffs in Sharma v. BMW of North America, LLC, Civil Action No. 3:13-cv-02274 (the "Sharma Action"), filed their Third Amended Class Action Complaint in the United States District Court for the Northern District of California, asserting claims that arise from factual allegations similar to those at issue here.  (Decl. of Christopher J. Dalton ("Dalton Decl."), Ex. A ("Sharma TAC"), ECF No. 55.)[4]

The Sharma plaintiffs—whose counsel overlaps with the counsel representing Catalano here (see Dalton Decl., Ex. E)—allege claims against BMW NA for violations of California's consumer protection laws and for breach of the implied warranty of merchantability under California law (Sharma TAC).  Similar to the FAC in the present suit, the Sharma TAC alleges that various BMW models contain a design defect in which certain vital electrical components are located in the lowest part of the vehicles' trunks where they are prone to water damage, and that design flaws in the drainage tubes of the vehicles' sunroofs cause leaks that exacerbate this problem.  (Sharma TAC ¶¶ 1-2.)  Pursuant to a stipulation entered in Sharma, motions for class certification were due on February 12, 2016, with a hearing on the motion scheduled for October 14, 2016.  (Dalton Decl., Ex. C, ECF No. 55.)  The class that the Sharma plaintiffs seek to certify is geographically limited to California.  (Sharma TAC ¶ 78.)

On December 4, 2015, defendants in this action filed the pending motion to dismiss the First Amended Complaint, arguing that the action should be dismissed,

---

[4] The Sharma Action was initiated on May 17, 2013, when the original complaint was filed in that action.  (See Dalton Decl., Ex. E, ECF No. 55.)

stayed, or transferred pursuant to the first-filed rule based on the earlier-filed
Sharma Action, or should be dismissed for failure to state a claim pursuant to Rule
12(b)(6).  (ECF No. 54.)  Defendants' motion became fully briefed on February 5,
2016.  (ECF No. 64.)

## II.   LEGAL STANDARD FOR MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the
grounds upon which [its] claim rests through factual allegations sufficient 'to raise a
right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund,
Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S.
544, 555 (2007)).  In other words, the complaint must allege "enough facts to state a
claim to relief that is plausible on its face."  Starr v. Sony BMG Music Entm't, 592
F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570); see also Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (same).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at
678.

The Court does not, however, credit "mere conclusory statements" or
"threadbare recitals of the elements of a cause of action."  Id.  If the court can infer
no more than "the mere possibility of misconduct" from the factual averments—in
other words, if the well-pleaded allegations of the complaint have not "nudged
claims across the line from conceivable to plausible," dismissal is appropriate.
Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679).

On a motion to dismiss, the Court accepts as true the factual allegations in the pleadings and draws all inferences in plaintiffs' favor. See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555-57). If a fact is susceptible to two or more competing inferences, in evaluating these motions, the Court must, as a matter of law, draw the inference that favors the plaintiff so long as it is reasonable. N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 121 (2d Cir. 2013). "[T]he existence of other, competing inferences does not prevent the plaintiff[s'] desired inference from qualifying as reasonable unless at least one of those competing inferences rises to the level of an obvious alternative explanation." Id. (internal quotation marks omitted).

Where necessary, the Court may supplement the allegations in the Complaint with facts from documents either referenced in the Complaint or relied upon in framing the Complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[W]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)).

14

III.   DISCUSSION

BMW's motion raises two distinct theories for dismissal.  First, BMW contends that the entire action should be dismissed—or at least stayed or transferred—pursuant to the first-filed rule on the ground that it is duplicative of the earlier filed <u>Sharma</u> Action.  Second, BMW argues that as to each claim alleged in the FAC, Catalano fails to state a claim for particularized reasons; BMW contends that, as a result, the FAC must be dismissed pursuant to Rule 12(b)(6).[5]

As to their Rule 12(b)(6) arguments, BMW contends that Catalano fails to plausibly allege an express warranty claim because the Certified Pre-Owned Warranty doesn't cover design defects, and that is the only sort of defect fairly alleged by his allegations.  BMW argues that the breach of contract/common law warranty claim fails for the same reasons.  BMW argues that both implied warranty claims fail because Catalano lacks privity with defendants and these claims are barred by the applicable statute of limitations; BMW also provides additional grounds for dismissal that are particularized to each implied warranty claim.  As to Catalano's common law fraudulent concealment and N.Y. GBL § 349 claims, BMW primarily contends that these claims fail because the FAC doesn't plausibly allege defendants' knowledge of the defects.  Finally, BMW argues that Catalano's declaratory relief claim should be dismissed as duplicative of his legal claims, and that his claim for injunctive relief should be dismissed because it is preempted by federal law.

---

[5] As part of its Rule 12(b)(6) argument, BMW also asserts that all of Catalano's claims against BMW MC must be independently dismissed at the outset because he lacks Article III standing to pursue any claims against that entity.

While the Court concludes that the first-filed rule does not apply on the record presented here, as explained further below, the Court concludes that all claims against BMW MC, and all but Catalano's N.Y. GBL § 349 claim against BMW AG and BMW NA, must be dismissed.

A.   First-Filed Rule

BMW argues that this action should be dismissed or, in the alternative, stayed or transferred, pursuant to the first-filed rule because the Sharma Action was filed before this case and involves substantially similar allegations.  (Defs.' Opening Br. at 7-10, ECF No. 56; Defs.' Reply Br. at 1-2, ECF No. 64.)  Pursuant to the first-filed rule, "where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second."  First City Nat. Bank & Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir. 1989) (alterations omitted); see also New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010).  A court may invoke the rule when two actions involve the same parties and legal issues. Employers Ins. of Wausau v. Fox Entm't Grp., Inc., 522 F.3d 271, 274 (2d Cir. 2008). Courts have applied the doctrine even in the absence of absolute identity of the parties where there are substantial overlapping factual and legal issues between both actions.  MasterCard Int'l, Inc. v. Lexcel Sols., Inc., No. 03 CIV.7157(WHP), 2004 WL 1368299, at *8 (S.D.N.Y. June 16, 2004); see also Wyler-Wittenberg v. MetLife Home Loans, Inc., 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012).

BMW argues that the first-filed rule applies here because the allegations in the FAC are substantially similar to those in the Sharma Action.  Both cases

involve allegations of manufacturing or design defects relating to the placement of electronic components in the trunks of certain BMW models and defects relating to sunroof drainage tubes, as well as allegations of BMW entities' alleged knowledge and concealment of those defects.  While these similarities are significant, the identity of facts and legal issues ends there.  Upon comparing the various relevant aspects of the two actions, there are at least two important distinctions that counsel against application of the first-filed rule.

First, there is an absence of identity as to the participants in the two cases. The named plaintiffs in the two actions are not the same, nor are any class members in this action—individuals who purchased or leased vehicles in New York—likely to be class members in the Sharma Action—individuals who purchased or leased vehicles in California.  The named defendants are also not identical. BMW NA is the only defendant present in both actions, as the Sharma Action does not name either BMW AG or BMW MC as defendants.  The absence of these defendants in the Sharma Action is particularly significant as discovery has closed in that case; as a result, Catalano would not be able to obtain discovery against these defendants if this action was dismissed in favor of Sharma.

Second, although plaintiffs in both actions allege violations of warranties and consumer fraud statutes, the claims asserted in each case arise under the laws of different states.  Here, Catalano asserts claims under New York law for vehicles that were purchased or leased in New York.  In Sharma, the plaintiffs assert claims under California law for vehicles purchased or leased in California.  Resolution of

17

claims in <u>Sharma</u> is, therefore, not dispositive of the claims presented here.  In contrast to most of the cases that BMW relies on, <u>e.g.</u>, <u>Tate-Small v. Saks Inc.</u>, No. 12 CV 1008 HB, 2012 WL 1957709 (S.D.N.Y. May 31, 2012); <u>Wyler-Wittenberg</u>, 899 F. Supp. 2d 235, there are no overlapping federal law claims between the two actions.  Given the distinctions between the two actions, the Court concludes that the overlap of factual and legal issues is insufficient to warrant application of the first-filed rule.  <u>E.g.</u>, <u>Quinn v. Walgreen Co.</u>, 958 F. Supp. 2d 533, 539 (S.D.N.Y. 2013) (declining to apply first-filed rule where case presented neither identical issues nor identical parties as the first-filed action); <u>Lloyd v. J.P. Morgan Chase & Co.</u>, No. 11 CIV. 9305 LTS, 2012 WL 3339045, at *1-2 (S.D.N.Y. Aug. 14, 2012) (declining to apply first-filed rule because state law based claims and class definition in first-filed case did not subsume and would not be conclusive of those asserted in instant action).

B.   <u>Catalano's Article III Standing against BMW MC</u>

Before turning to the specific defenses particularized to each of Catalano's claims, defendants argue that all claims against BMW MC must be dismissed because Catalano lacks Article III standing to pursue claims against that entity. (Defs.' Opening Br. at 11-12; Defs.' Reply Br. at 2-3.)  The FAC alleges that BMW MC is the sole global producer of BMW X3 and X5 model vehicles (two of the three categories of Class Vehicles).  (FAC ¶ 31.)  Catalano, however, purchased a 5 Series BMW model (the remaining category) manufactured by BMW AG.  (FAC ¶ 13.) Catalano does not dispute that BMW MC had no involvement in the production (or sale or marketing) of his vehicle, but asserts that he has standing to pursue claims

18

related to models of vehicles he does not own.  (Pl.'s Opp. Br. at 8-9, ECF No. 60.)

Specifically, Catalano argues that the X3 and X5 model vehicles are sufficiently

similar to the 5 Series vehicle that he purchased to confer standing on him, as all

three categories of vehicles have the same alleged safety defect upon which his

various claims are based.  Catalano suggests that defendants' argument should be

characterized as questioning whether he can appropriately represent the putative

class, an inquiry that is better left for resolution on a motion for class certification,

rather than at the pleading stage on a motion to dismiss.  (Pl.'s Opp. Br. at 9.)  The

Court finds Catalano's position unconvincing, and concludes that Catalano has

failed to establish Article III standing as to BMW MC.

 To satisfy Article III standing, "a plaintiff must demonstrate (1) a personal

injury in fact (2) that the challenged conduct of the defendant caused and (3) which

a favorable decision will likely redress."  Mahon v. Ticor Title Ins. Co., 683 F.3d 59,

62 (2d Cir. 2012); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61

(1992).  As to each asserted claim, the plaintiff must have suffered a distinct and

palpable injury to himself.  Mahon, 683 F.3d at 64; see Powers v. Ohio, 499 U.S.

400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal

rights and interests, and cannot rest a claim to relief on the legal rights or interests

of third parties.").  In the class action context, Article III standing requires that "for

every named defendant there must be at least one named plaintiff who can assert a

claim directly against that defendant."  Cent. States Se. & Sw. Areas Health &

Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 241 (2d Cir.

2007); accord NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co., 693 F.3d 145, 159 (2d Cir. 2012).  As such, the relevant legal entity for determining whether Article III standing is proper is the named plaintiff(s), not the proposed class.  Mahon, 683 F.3d at 64.  Generally speaking, the question of Article III standing should precede the question of class certification.  Id.  That Rule 23 permits a plaintiff to represent a class against a non-injurious defendant does not mean that Article III is similarly flexible.  Id. ("[W]hether or not Rule 23 would permit a plaintiff to represent a class against non-injurious defendants cannot affect the plaintiff's Article III standing to sue the non-injurious defendants.").

Catalano is the only named plaintiff in this action.  He concedes that he did not purchase a BMW X3 or X5 model vehicle, the only categories of Class Vehicles alleged to have been produced by BMW MC.  Notably, besides the allegation that BMW MC is the sole producer of X3 and X5 model vehicles, the FAC contains no other allegations linking BMW MC to any injuries suffered by any of the putative class members.  (See FAC ¶¶ 28, 31 33, 82, 89, 116, 145, 147.)  There are no allegations tying BMW MC to any of Catalano's personal claims or the injuries that he suffered.  In contrast to the cases cited by Catalano in his opposition brief, this is not a circumstance in which a plaintiff purchased products from a particular defendant and argued that he had standing to assert claims on behalf of purchasers of related products against that same defendant.  See, e.g., Tomassini v. FCA U.S. LLC, No. 3:14-CV-1226 MAD/DEP, 2015 WL 3868343, at *12 (N.D.N.Y. June 23, 2015); Clancy v. The Bromley Tea Co., 308 F.R.D. 564, 569 (N.D. Cal. 2013); In re

Frito-Lay N. Am., Inc. All Nat. Litig., No. 12-MD-2413 RRM RLM, 2013 WL
4647512, at *11 (E.D.N.Y. Aug. 29, 2013); Anderson v. Jamba Juice Co., 888 F.
Supp. 2d 1000, 1005-06 (N.D. Cal. 2012). Rather, in this case, Catalano has not
personally asserted any viable claims against BMW MC as to any product that he
himself purchased.[6] Because the only named plaintiff does not have a direct claim
against BMW MC, BMW MC must be dismissed on Article III standing grounds.

C.     <u>Claims for Breach of Express Warranty and Contract/Common Law
Warranty</u>

Catalano's Fifth Claim asserts a cause of action for breach of express
warranty based on BMW NA's failure to comply with its warranty obligations to
repair certain covered defects during the warranty period. (FAC ¶¶ 134-38.)
Catalano alleges that BMW NA provided him a Certified Pre-Owned Warranty,
which covers "defects in materials or workmanship" (including to electrical parts
and systems), and states that such defects will be repaired "without charge for parts
or labor." (FAC ¶ 45.)[7] The FAC describes the defects in the Class Vehicles—which

---

[6] Catalano seeks to defeat BMW's Article III standing argument by asserting that "the pleading
stage is not the time to analyze whether the named plaintiff can appropriately represent the
putative class" and that he has standing because his claims and the other class members' claims "are
based on the same core factual allegations and causes of action involving an identical defect across
all Class Vehicles." (Pl.'s Opp. Br. at 9-10.) As explained above, these arguments are inapposite
where the named plaintiff(s) cannot assert any direct claim against the defendant challenging
standing. Furthermore, Catalano's argument that he may assert claims that do not belong to him on
behalf of absent class members on the ground that the claims are based on the same core factual
allegations has been substantially foreclosed by the Second Circuit's decision in <u>Retirement Board of
the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of New York Mellon</u>. <u>See</u> 775
F.3d 154, 161-63 (2d Cir. 2014) (holding that named plaintiffs do not have class standing to assert,
on behalf of absent class members, breach of duty claims against the trustee of an RMBS trust in
which the plaintiffs did not invest).

[7] In relevant part, the Certified Pre-Owned Warranty states:

> The Protection Plan is designed to protect you from the expenses of repairs associated with
> the unanticipated or unexpected failure of a covered part and/or component as a result of a
> defect in material or workmanship only.

again relate to the location of vital electronic components in the lowest part of the vehicles' trunks, the non-water resistant materials in which those electronic components are housed, and the location and propensity to getting clogged of the sunroof drainage tubes—as "serious design, manufacturing, or material defects that significantly impact the [vehicles'] safety and value."  (FAC ¶¶ 1-2, 34-35.)  Citing to this Court's decision in Garcia v. Chrysler Grp. LLC, No. 14-CV-8926 KBF, 2015 WL 5123134 (S.D.N.Y. Sept. 1, 2015), BMW argues that Catalano fails to plausibly plead an express warranty claim on the ground that the FAC only actually alleges the existence of a design defect, whereas the Certified Pre-Owned Warranty only covers manufacturing defects.  The Court agrees.

Under New York law, "a manufacturing defect . . . results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm" and "a design defect . . . results when the product as designed is unreasonably dangerous for its intended use."  McCarthy v. Olin Corp., 119 F.3d 148, 154-55 (2d Cir. 1997).  As this Court explained in Garcia, a warranty that protects against defects in materials or workmanship covers manufacturing defects, but not design defects.  Garcia, 2015 WL 5123134, at *10 (citing Cali v. Chrysler Grp. LLC, No. 10 Civ. 7606(JSR), 2011 WL 383952, at *2 (S.D.N.Y. 2011), aff'd, 426 F. App'x 38 (2d Cir. 2011) (summary order)); accord PPC Broadband, Inc. v. Transformix Eng'g Inc., No. 5:14-CV-00315 MAD, 2015 WL 339564, at *10 & n.4 (N.D.N.Y. Jan. 26, 2015).  Although, as a general matter, a plaintiff is fully entitled

(Dalton Decl., Ex. D at SHARMA_BMWNA_000876, ECF No. 55.)  The full warranty, available at Exhibit D to the Dalton Declaration, may be considered on this motion because it is incorporated by reference into and integral to the FAC.  DiFolco, 622 F.3d at 111; Chambers, 282 F.3d at 153.

to plead claims for both design defect and manufacturing defect in the alternative,
"a manufacturing defect claim pled in the alternative to a design defect claim is
subject to dismissal at the motion to dismiss stage where the complaint makes only
'offhand references to manufacturing defects' and the purported class includes 'all
purchasers or lessees' of the vehicles at issue." Id. (quoting Sater v. Chrysler Grp.
LLC, No. EDCV 14–00700–VAP (DTBx), 2015 WL 736273, at *4 (C.D. Cal. Feb. 20,
2015)).

 As was the case in Garcia, Catalano relies only on offhand, conclusory
references to manufacturing defects in the FAC to support his breach of express
warranty claim.  The only allegations indicating that the defects—which Catalano
alleges are common to all Class Vehicles—were manufacturing defects is the
conclusory and repeated assertion that the defects identified are related to the Class
Vehicles' "design, manufacturing or materials" and his assertion that the Class
Vehicles were "not manufactured in accordance with BMW AG's intended
specifications" (without specifying the parts to which that statement applies).  (FAC
¶¶ 1, 8, 24, 35, 58, 62, 63, 66, 68, 157.)  At the same time, the FAC alleges that all of
the Class Vehicles share these "common defects," strongly suggesting that this was
an intentional decision on the part of the manufacturer.  (FAC ¶ 157.)  The nature
of the alleged defects—the location of vital electronic components at the lowest part
of the trunk compartment near the sunroof drainage tubes—further indicates that
the defects at issue are based on the vehicles' design, not manufacturing process;
Catalano's allegations smack of a deliberate design choice.  (See FAC ¶ 1 ("Because

Defendants <u>decided to</u> place these vital electrical components in what is often the lowest part of the vehicle . . . and make or house them using materials that are insufficiently water or moisture resistant, they are especially prone to water damage that can be caused through the normal and ordinary use of the vehicle.") (emphasis added).)

Taken together, these allegations strongly suggest a defect in the Class Vehicles' design, rather than a mistake in the manufacturing process itself.[8] Although arguably the allegations are slightly more robust here than in <u>Garcia</u> in that Catalano tries to avoid at least one pitfall by creating a special "Warranty Subclass" as to this claim, the Court concludes that, because Catalano alleges that the same defects were present in numerous vehicle models produced by multiple BMW entities over several years, and there is nothing specific in the FAC to suggest that the defects complained of were caused by a flaw in BMW's global manufacturing process, Catalano fail to set forth sufficient facts to assert a manufacturing defect that could support his express warranty claim.[9]

Stated in the alternative to his breach of express warranty claim, Catalano's Sixth Claim similarly asserts breach of contract and/or common law warranty.

---

[8] Catalano argues that his allegations relating to the materials BMW used in the Class Vehicles distinguish his express warranty claim from those at issue in <u>Garcia</u>. (Pl.'s Opp. Br. at 11-12.) Again, no allegation in the FAC supports an inference that any defects in materials, which are alleged to be present in all Class Vehicles, were caused by BMW's manufacturing process rather than the vehicles' design. To the extent Catalano argues that his claim should survive because the warranty language is ambiguous (Pl.'s Opp. Br. at 13), the Court concludes that no such ambiguity exists in the relevant portions of the warranty.

[9] In light of this determination, the Court need not consider defendants' argument that Catalano's express warranty claim is also subject to dismissal because the Certified Pre-Owned Warranty disclaims coverage for costs associated with water leaks in the body and interior of a covered vehicle.

(FAC ¶¶ 139-43.)  Besides the Certified Pre-Owned Warranty discussed above, the FAC identifies no other written contract or statement constituting a contract.  To the extent that this claim is not subsumed in or duplicative of Catalano's breach of express warranty claim—and thus subject to dismissal on the same grounds—it must be dismissed for failure to allege the existence of an actual contract.  See Roberts v. Karimi, 251 F.3d 404, 407 (2d Cir. 2001) (a plaintiff in a breach of contract case must prove the existence of an enforceable contract).

    D.    <u>Claims for Breach of Implied Warranties</u>

In his Third and Fourth Claims, respectively, Catalano alleges claims for breach of the implied warranties of merchantability and fitness for a particular purpose.  (FAC ¶¶ 109-33.)  Under the implied warranty of merchantability, every contract for the sale of goods contains an implicit warranty that the goods are fit for the ordinary purposes for which such goods are used.  N.Y. U.C.C. Law § 2-314. Catalano alleges that, as a result of the defects described in the FAC, the Class Vehicles "are not fit for their ordinary purpose of providing reasonably and reliable safe transportation."  (FAC ¶ 114.)  The implied warranty of fitness for a particular purpose holds that, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods," there is an implied warranty that "the goods shall be fit for such purpose."  N.Y. U.C.C. Law § 2-315.  Catalano alleges that the defects described above rendered the Class Vehicles unfit for "the particular purpose of safe and reliable transportation" and that BMW had reason to know that the class members relied on its "skill and

judgment to design and manufacture vehicles suitable for this particular purpose."
(FAC ¶¶ 128-30.)  BMW asserts that both implied warranty claims fail on multiple
grounds.

Defendants first argue that Catalano's implied warranty claims must be
dismissed because Catalano is not in privity with defendants.  Although New York
has long since dispensed with the privity requirement for express warranty claims,
see Randy Knitwear, Inc. v. Am. Cyanamid Co., 11 N.Y.2d 5, 13 (1962), New York
courts continue to require privity between a plaintiff and defendant with respect to
claims for breach of the implied warranties of merchantability and fitness for a
particular purpose where the only loss alleged is economic, Arthur Jaffee Associates
v. Bilsco Auto Serv., Inc., 58 N.Y.2d 993, 995 (1983); see also Abraham v.
Volkswagen of Am., Inc., 795 F.2d 238, 249 (2d Cir. 1986) ("To have a cause of
action for breach of an implied warranty of fitness, therefore, privity must
necessarily exist because the creation of the warranty requires a direct exchange
between buyer and seller."); Arthur Glick Leasing, Inc. v. William J. Petzold, Inc.,
51 A.D.3d 1114, 1116 (3d Dep't 2008); Lexow & Jenkins, P.C. v. Hertz Commercial
Leasing Corp., 122 A.D.2d 25, 26 (2d Dep't 1986).  Here, Catalano alleges purely
economic loss—he has not alleged any personal injury.  (See FAC ¶ 17, Prayer for
Relief ¶ D (seeking "[p]ayment to the Class of all damages associated with the
replacement of the defective products.").  He thus must allege that he was in
contractual privity with one of the defendants—Catalano fails to do so.[10]

---

[10] To the extent that Catalano argues that privity is unnecessary because the alleged defects are
dangerous (Pl.'s Opp Br. at 14 n.9), the Court rejects that argument.  Case law supporting such an

Catalano attempts to meet the privity requirement by arguing that he and the other putative class members were the intended third-party beneficiaries of BMW's implied warranties, specifically pointing to his allegations that BMW advertised and made representations directly to consumers, expecting that they would be the ultimate purchasers of the Class Vehicles.  (Pl.'s Opp. Br. at 14-15.) "Under New York law, a plaintiff claiming rights as a third-party beneficiary must demonstrate: (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." Marshall v. Hyundai Motor Am., 51 Supp. 3d 451, 469 (S.D.N.Y. 2014) (quotation marks omitted).

In his implied warranty of merchantability claim, Catalano baldly alleges that he and the other class members were "intended third-party beneficiaries of the contracts for sale of the Class Vehicles from Defendants to the dealerships who ultimately sold the Class Vehicles to Plaintiff and Class members" and that defendants knew that consumers were the "end-users of the Class Vehicles."  (FAC ¶ 116.)[11]  Catalano presents no allegations, other than naked assertions, to show

---

exception is not persuasive and the weight of authority holds that no such exception applies under New York law.  See, e.g., Dixon v. Ford Motor Co., No. 14-CV-6135 JMA ARL, 2015 WL 6437612, at *4-5 (E.D.N.Y. Sept. 30, 2015); Adirondack Combustion Techs., Inc. v. Unicontrol, Inc., 17 A.D.3d 825, 827 (3d Dep't 2005); Ofsowitz v. Georgie Boy Mfg., Inc., 231 A.D.2d 858, 858 (4th Dep't 1996).

[11] The Court observes that the FAC arguably also alleges that he and the other class members were actually in direct privity with BMW NA based on their reliance on BMW NA's representations and advertisements and its written warranty agreements relating to the class members' vehicles.  (FAC ¶ 116.)  Even if Catalano had not waived this point by failing to raise it in his opposition brief, see Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs

that any contracts between BMW and dealerships were intended to benefit him or other class members; the FAC does not cite any provisions from the alleged contracts between BMW and dealerships indicating that the class members are intended third-party beneficiaries of those agreements.  Catalano's allegations are therefore insufficient to show that the class members were intended third-party beneficiaries, even at the pleading stage.  See Marshall, 51 F. Supp. 3d at 469; Dixon, 2015 WL 6437612, at *6.

BMW argues that Catalano's implied warranty claims also fail because they are barred by New York's four-year statute of limitations, which runs from the time of the delivery of the vehicle.  Szymczak v. Nissan N. Am., Inc., No. 10 CV 7493 VB, 2011 WL 7095432, at *11 (S.D.N.Y. Dec. 16, 2011); see N.Y. U.C.C. Law § 2-725 (stating that a cause of action for breach of warranty accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach).  The Court agrees.  Catalano's vehicle was delivered to him in 2010 (and was delivered to the original owner as early as 2007) (FAC ¶ 13), but he did not commence this action until more than four years later in June 2015.

Catalano seeks to avoid the limitations defense by arguing that the limitations period must be equitably tolled based on his allegations that BMW concealed the Class Vehicles' defects and denied warranty claims both before and after the purchase of Catalano's vehicle.  (FAC ¶¶ 73-76.)  Although, under New York law, "the doctrines of equitable tolling or equitable estoppel may be invoked to

are considered waived and normally will not be addressed on appeal."), these allegations are conclusory and not plausibly supported by the remainder of the FAC to the extent they suggest that BMW made implied warranties to the class members.

defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action," Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) (quotation marks omitted), the four-year limitations period applicable to these claims begins to run even when the defect is discovered later, Szymczak, 2011 WL 7095432, at *11 (citing Orlando v. Novurania of Am., Inc., 162 F. Supp. 2d 220, 223 (S.D.N.Y. 2001)).  In other words, no discovery rule applies to such claims.  Because the commencement of the limitations period does not depend on a plaintiff's knowledge of a defect, there is no basis to apply equitable tolling to Catalano's implied warranty claims.  Cf. Marshall, 51 F. Supp. 3d at 462 ("Equitable tolling applies where a defendant's fraudulent conduct results in a plaintiff's lack of knowledge of a cause of action."); Jackson v. Eddy's LI RV Ctr., Inc., 845 F. Supp. 2d 523, 532 (E.D.N.Y. 2012).  Accordingly, the implied warranty claims are time-barred.

In addition to the above two meritorious grounds for dismissal that are collectively addressed to both implied warranty claims, Catalano also fails to plausibly plead at least one additional element necessary to state a claim for breach of the implied warranty of fitness for a particular purpose.  "[T]he implied warranty of fitness for a particular purpose does not arise in every consumer sale, but only when a seller knows or has reason to know the particular purpose for which a buyer requires goods, and also knows or should know that the buyer is relying on his special knowledge." Abraham, 795 F.2d at 249 (citation omitted).  BMW argues that Catalano's claim fails because, inter alia, he does not and cannot allege that

29

defendants knew of any particular purpose for which he was buying his vehicle. (Defs.' Opening Br. at 18-19.)  The Court agrees.  The FAC does not plausibly allege that BMW—which is not alleged to have engaged directly with Catalano—could have been aware of any particular purpose for which Catalano sought to use his vehicle beyond the extent to which it would be aware of any buyer's purpose for purchasing a BMW vehicle.

Thus, for the reasons explained above, Catalano's implied warranty claims must be dismissed.[12]

### E.   Fraudulent Concealment

Catalano's First Claim asserts a cause of action for fraudulent concealment under New York law.  (FAC ¶¶ 88-102.)  Catalano alleges that, as early as 2004, BMW knew that the Class Vehicles were "defective in their design and manufacture" and "would fail in advance of their anticipated useful life under ordinary use and conditions;" he further alleges that, with intent to defraud, BMW "purposely concealed material information regarding the defects" despite a duty to disclose based on its "exclusive knowledge of material facts."  (FAC ¶¶ 89-95.) BMW argues that this claim must be dismissed because Catalano fails to plausibly show defendants' knowledge of the alleged defects.  (Defs.' Opening Br. at 21-22; Defs.' Reply Br. at 8-9.)  Although the Court disagrees with BMW's knowledge argument, Catalano's fraudulent concealment claim is nonetheless subject to

---

[12] In light of the Court's other rulings, the Court need not and does not address BMW's other grounds for dismissing the implied warranty claims.

dismissal for failure to adequately plead a strong inference of fraudulent intent as required by Rule 9(b).

To establish a claim for fraudulent concealment under New York law, a plaintiff must allege that: "(1) the defendant made a misrepresentation or a material omission of fact which was false and which the defendant knew to be false; (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it; (3) the plaintiff justifiably relied on the misrepresentation or material omission; . . . (4) injury [and (5)] the defendant had a duty to disclose the material information." Bannister v. Agard, 125 A.D.3d 797, 798 (2d Dep't 2015); see Garcia, 2015 WL 5123134, at *17. "A duty to disclose arises where there is a fiduciary relationship between the parties" or "where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." Grand Union Supermarkets of the Virgin Islands, Inc. v. Lockhart Realty Inc., 493 F. App'x 248, 252 (3d Cir. 2012) (citing Swersky v. Dreyer & Traub, 219 A.D.2d 321, 327 (1st Dep't 1996)).

BMW primarily argues that Catalano's fraudulent concealment claim should be dismissed because his "allegations are circular, equating design choices with knowledge" and "it does not follow that [defendants] automatically knew of the alleged defects merely because they may have been aware that certain electronic components parts and drainage tubes were located in the vehicle's trunk." (Defs.' Opening Br. at 21-22.) This argument mischaracterizes the FAC and fails to construe all inferences in Catalano's favor, as is required at the motion to dismiss

31

stage.  Catalano does not attempt to allege BMW's knowledge by mere reliance on

conclusory assertions that it must have known of the defects based on its awareness

of the Class Vehicles' design.  Rather, Catalano alleges that BMW was aware of the

defects described in the FAC through numerous complaints made to the NHTSA

and on consumer forums, and based on repair invoices, warranty claims and, most

significantly, Technical Service Bulletins that BMW itself issued to dealers

describing the defects in question.  (FAC ¶¶ 3-9, 52-53, 59, 61, 64.)  These

allegations, taken together, are sufficient to support an inference of BMW's

knowledge of the alleged defects at this stage.  See, e.g., Tomassini v. FCA U.S.

LLC, No. 3:14-CV-1226 MAD/DEP, 2015 WL 3868343, at *6 (N.D.N.Y. June 23,

2015); In re MyFord Touch Consumer Litig., 46 F. Supp. 3d 936, 958 (N.D. Cal.

2014); Grodzitsky v. Am. Honda Motor Co., No. 2:12-CV-1142-SVW-PLA, 2013 WL

2631326, at *6 (C.D. Cal. June 12, 2013); Woods v. Maytag Co., 807 F. Supp. 2d 112,

126 (E.D.N.Y. 2011).[13]

Although Catalano has adequately pleaded BMW's knowledge of the Class

Vehicles' alleged defects, his fraudulent concealment claim nonetheless must be

dismissed for failure to meet the heightened pleading standards of Rule 9(b), which

apply to such a claim.  Warren v. John Wiley & Sons, Inc., 952 F. Supp. 2d 610, 616

---

[13] The Court recognizes that BMW has identified out-of-district (and mostly out-of-circuit) case law in which arguably similar allegations were held to be insufficient to establish knowledge of a defect. See McQueen v. BMW of N. Am., LLC, No. CIV.A. 12-06674 SRC, 2014 WL 656619, at *4 (D.N.J. Feb. 20, 2014); Alban v. BMW of N. Am., No. CIV. 09-5398 DRD, 2011 WL 900114, at *10-12 (D.N.J. Mar. 15, 2011); Baba v. Hewlett-Packard Co., No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011); Woods v. Maytag Co., No. 10-CV-0559 ADS WDW, 2010 WL 4314313, at *8 (E.D.N.Y. Nov. 2, 2010).  The Court believes the allegations in those cases created a weaker inference of knowledge than is the case here and finds, to the extent the allegations were approximately equivalent, that the reasoning in those cases is not persuasive.

(S.D.N.Y. 2013); Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A., 244 F.R.D. 204, 213 (S.D.N.Y. 2007). "In the case of fraudulent concealment or omission, where the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through fraud." Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC, 842 F. Supp. 2d 502, 513 (S.D.N.Y. 2012) (quotation marks omitted). A plaintiff must also "allege facts that give rise to a strong inference of fraudulent intent, which may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (citing Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995), and Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)) (quotation marks omitted).

The Court concludes that Catalano has failed to plead facts establishing a strong inference of defendants' fraudulent intent. As explained below, he has not alleged facts showing either that BMW had a motive and opportunity to commit fraud or facts constituting strong circumstantial evidence of conscious misbehavior or recklessness.

First, the FAC never identifies or explains BMW's motive to commit fraud. To the extent that the FAC could be construed as pleading that BMW acted to increase sales/profits, a generalized motive that could be possessed by any corporate actor or director or officer is insufficient.  To adequately plead motive for purposes of Rule 9(b), a plaintiff must allege "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged."  Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001).  For instance, "[a] plaintiff must do more than merely charge that executives aim to prolong the benefits of the positions they hold."  Id.; see also Acito, 47 F.3d at 54.

Second, the allegations do not provide strong circumstantial evidence of conscious misbehavior or recklessness.  Catalano attempts to support such an inference by alleging only BMW's knowledge of the Class Vehicles' defects and that it did not disclose those defects to consumers.  (E.g., FAC ¶ 90.)  Under the circumstances, such allegations are insufficient under Rule 9(b).  To satisfy Rule 9(b), a plaintiff must allege "particularized facts to support the inference that the defendants acted recklessly or with fraudulent intent."  Eternity Global Master Fund, 375 F.3d at 186.  The alleged reckless conduct must, at the least, be "highly unreasonable" and represent "an extreme departure from the standards of ordinary care."  In re Carter-Wallace, Inc., Sec. Litig., 220 F.3d 36, 39 (2d Cir. 2000).  Allegations showing a defendant's actual knowledge of material information coupled with a failure to disclose do not meet this standard where the facts do not indicate a

"clear duty to disclose." Kalnit, 264 F.3d at 144.[14]  That is the essence of what is alleged here.  While Catalano makes the conclusory allegation that BMW was under a duty to disclose based on its "exclusive knowledge of material facts" (FAC ¶ 92), he offers no other allegations that show that BMW was in possession of any information relevant to the defects that was not also possessed by outside third parties, including the NHTSA.  Strong circumstantial evidence of conscious misbehavior or recklessness is thus absent, and this claim must be dismissed.

Catalano has not expressly sought leave to amend the FAC, but the Court will allow Catalano an opportunity to amend solely with respect to his fraudulent concealment claim, should he desire to do so.  The Court will allow Catalano this opportunity because the Court considers this claim to be a relatively close call, BMW did not squarely raise the Rule 9(b) argument relied on by the Court and because, as explained below, the Court is, in any event, allowing Catalano's N.Y. GBL § 349 claim to proceed.  In short, as to this claim, it is possible that leave to amend would not be futile.  See Nielsen v. Rabin, 746 F.3d 58, 64 (2d Cir. 2014).  The Court does not, at this time, express any view as to whether Catalano will be able to successfully replead a fraudulent concealment claim that passes muster.

   F.   N.Y. GBL § 349

   Catalano's Second Claim alleges a violation of N.Y. GBL § 349, New York's consumer protection statute.  (FAC ¶¶ 103-108.)  In support of this claim, Catalano

---

[14] In contrast, in Novak v. Kasaks, the Second Circuit held that the plaintiffs adequately pleaded scienter by alleging that the defendants had, after discussion, made a conscious decision to withhold material information in a circumstance where the duty to disclose the concealed information was not seriously disputed.  See 216 F.3d 300, 311-12 (2d Cir. 2000); see also Kalnit, F.3d at 142-43 (characterizing Novak).

alleges that BMW, intending that the class members rely on its "acts of concealment and omissions," "failed to disclose material facts" to the class members "with respect to the use and dangers associated with the Class Vehicles" identified in the FAC. (FAC ¶¶ 106-08.)  Primarily asserting the same argument that it advanced in opposition to Catalano's fraudulent concealment claim, BMW argues that the § 349 claim fails because the FAC does not plausibly plead BMW's knowledge of the alleged defects.  (Defs.' Opening Br. 20-22; Defs.' Reply Br. at 8-9.)  In a footnote, BMW also argues that Catalano fails to detail with specificity what materials he was exposed to that should have, but did not, disclose the alleged defects.  (Defs.' Opening Br. 20 n.11.)  The Court finds these arguments unpersuasive, and concludes that this claim passes muster at this stage.

N.Y. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.  N.Y. GBL § 349; Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015).  To prove a claim under § 349, "'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'"  Orlander, 802 F.2d at 300 (quoting Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 944 (2012)).  To constitute a misleading or deceptive act under the statute, the defendant's act "must be likely to mislead a reasonable consumer acting reasonably under the circumstances."  Id. (quotation marks omitted); see Stutman v. Chemical Bank, 95 N.Y.2d 24, 29 (2000).  A deceptive practice "need not reach the level of

common-law fraud." <u>Stutman</u>, 95 N.Y.2d at 29.  Omissions are actionable under §

349, <u>see</u>, <u>e.g.</u>, <u>Newman v. RCN Telecom Servs., Inc.</u>, 238 F.R.D. 57, 74 (S.D.N.Y.

2006), and claims brought pursuant to the law are not subject to the particularity

requirements of Rule 9(b), <u>Pelman ex rel. Pelman v. McDonald's Corp.</u>, 396 F.3d

508, 511 (2d Cir. 2005).  While § 349 does not require proof of justifiable reliance, a

plaintiff seeking compensatory damages must show that the material deceptive act

or practice caused actual, although not necessarily pecuniary, harm.  <u>Small v.</u>

<u>Lorillard Tobacco Co.</u>, 252 A.D.2d 1, 7 (1st Dep't 1998) (citing <u>Oswego Laborers'</u>

<u>Local 214 Pension Fund v. Marine Midland Bank, N.A.</u>, 85 N.Y.2d 20, 26 (1995)).

As was the case with respect to Catalano's fraudulent concealment claim,

BMW primarily argues that Catalano's § 349 claim should be dismissed because he

fails to allege BMW's knowledge of the alleged defects.  For the reasons previously

stated, the Court is unconvinced by this argument.  The Court concludes that

Catalano has adequately alleged BMW's awareness of the alleged defects through a

variety of sources.  Specifically, the FAC alleges BMW's knowledge through

numerous complaints made to the NHTSA and on consumer forums, repair invoices,

warranty claims, and Technical Service Bulletins that BMW issued to dealers.

(FAC ¶¶ 3-9, 52-53, 59, 61, 64.)  Such allegations are sufficient to create an

inference of BMW's knowledge at the pleading stage.

As stated above, BMW briefly raises one additional argument that is specific

to Catalano's § 349 claim, which is that the FAC provides no detail as to what

marketing and advertising materials Catalano reviewed, when he reviewed them,

or what those materials said.  (Defs.' Opening Br. 20 n.11.)  While other district courts have, in certain instances, dismissed § 349 claims where the complaint never identifies the specific advertisements or statements alleged to be false or misleading, see Dixon v. Ford Motor Co., No. 14-CV-6135 JMA ARL, 2015 WL 6437612, at *8 (E.D.N.Y. Sept. 30, 2015); Woods, 2010 WL 4314313, at *15-16, this Court is unpersuaded that such reasoning should govern where, as here, the plaintiff identifies specific representations made in the defendants' marketing materials (FAC ¶¶ 15-16), and primarily relies on an omission-based theory of deception, see Chiarelli v. Nissan N. Am., Inc., No. 14-CV-4327 NGG VVP, 2015 WL 5686507, at *11 (E.D.N.Y. Sept. 25, 2015) ("Plaintiffs have adequately alleged an omissions-based theory.  In brief, Plaintiffs allege that Nissan failed to disclose information about the latent defect in the Timing Chain Tensioning System, which only Nissan had in its possession and that was relevant to consumers, including Plaintiffs."); see also Garcia, 2015 WL 5123134, at *21.  In short, Catalano has adequately alleged that BMW engaged in a deceptive act or practice (i.e. an omission) that caused him economic injury.  His § 349 passes muster at this stage.[15]

G.    Claim for Injunctive Relief

In his Seventh Claim, Catalano alleges a cause of action for injunctive relief that seeks an order directing BMW to take corrective action to avoid the safety risks posed by the Class Vehicles.  (FAC ¶¶ 144-52.)  That corrective action includes,

---

[15] Finally, the Court observes that, unlike a claim for fraudulent concealment, a claim brought pursuant to § 349 is not subject to the heightened pleading standards of Rule 9(b).  Pelman, 396 F.3d at 511.  Intent to defraud or mislead is not even necessary under the statute.  Oswego Laborers' Local, 85 N.Y.2d at 26.  BMW is thus not entitled to dismissal of the § 349 claim on that ground.

inter alia, issuing a nationwide program or fund to replace defective component parts, relocating or redesigning the electronic component compartment to prevent water intrusion or allow for improved water drainage, issuing notices to consumers concerning the Class Vehicles' defects, and immediately discontinuing the sale of unrepaired Class Vehicles.  (FAC ¶ 152.)  Catalano thus effectively seeks a recall and redesign of the Class Vehicles.  BMW argues that Catalano's claim for injunctive relief must be dismissed as preempted by the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. §§ 30101 et seq., and its implementing regulations. (Defs.' Opening Br. at 23-25.)

The Court need not reach BMW's preemption argument, however, because Catalano's Seventh Claim is subject to dismissal on the ground that an injunction is a remedy, not a separate cause of action.  E.g., Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010); Lekki Capital Corp. v. Automatic Data Processing, Inc., No. 01 CIV. 7421(LMM), 2002 WL 987147, at *3 (S.D.N.Y. May 14, 2002).  If Catalano is able to successfully assert his claim for violation of N.Y. GBL § 349, pursuant to which he is entitled to seek injunctive relief and damages, N.Y. GBL § 349(h), then the Court will consider his request for injunctive relief at that juncture.  Chiste, 756 F. Supp. 2d at 407-08.[16]

---

[16] In addition to pleading injunctive relief as a separate claim, Catalano also includes it in his prayer for relief.  (FAC, Prayer for Relief ¶ C.)  Having dismissed Catalano's Seventh Claim, the Court declines to resolve, at this juncture, the issue whether injunctive relief under GBL § 349 is preempted by federal law.

      H.     <u>Claim for Declaratory Relief</u>

In his final, Eighth Claim, Catalano seeks a declaration, pursuant to 28 U.S.C. § 2201, that "the Class Vehicles have common defects in their design, manufacturing or materials and that any future repairs involving water damage to electronic equipment in the trunk of the vehicle as described herein should be covered under the Class Vehicles' warranty and any extended warranty sold to Class members." (FAC ¶¶ 153-57.) District courts have discretion to determine whether and when to entertain a declaratory judgment action pursuant to § 2201. <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 282 (1995).

Defendants argue that this claim must be dismissed on the ground that it is duplicative of Catalano's legal claims and seeks precisely the same relief. (Defs.' Opening Br. at 22-23.) The Court agrees. Regardless of whether Catalano intends to seek class certification for declaratory and injunctive relief pursuant to Rule 23(b)(2) and other relief pursuant to Rule 23(b)(3), dismissal is warranted where, as here, the declaratory relief he seeks is duplicative of his other causes of action. <u>See Matthew v. RCN Corp.</u>, No. 12 CIV. 0185 JMF, 2012 WL 5834917, at *8 (S.D.N.Y. Nov. 14, 2012); <u>Aeolus Down, Inc. v. Credit Suisse Int'l</u>, No. 10 CIV. 8293 LLS, 2011 WL 5570062, at *5 (S.D.N.Y. Nov. 16, 2011); <u>Sofi Classic S.A. de C.V. v. Hurowitz</u>, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006).

IV.    CONCLUSION

For the reasons set forth above, BMW's motion is GRANTED IN PART AND DENIED IN PART. All claims against BMW MC are hereby dismissed. The only surviving claim as to BMW NA and BMW AG is Catalano's N.Y. GBL § 349 claim.

The Court will also allow Catalano an opportunity to replead <u>solely</u> his fraudulent concealment claim as to BMW NA and BMW AG.  Catalano may file a second amended complaint for that purpose not later than **14 days** from the date of this Opinion & Order.

The Clerk of Court is directed to close the motions at ECF Nos. 27 and 54.

SO ORDERED.

Dated:      New York, New York
            March 1, 2016

 

_____
KATHERINE B. FORREST
United States District Judge