UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

:

GEORGE CATALANO, on behalf of himself and
all others similarly situated,

:

:

Plaintiff,

:

:

-v-

:

:

BMW OF NORTH AMERICA, LLC, a New Jersey
limited liability company; and BAYERISCHE
MOTOREN WERKE AKTIENGESELLSCHAFT, a
corporation organized under the laws of the
Federal Republic of Germany,

:

:

:

:

Defendants.

:

:

------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 16, 2016

15-cv-4889 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

Plaintiff George Catalano ("Catalano") commenced this action in June 2015, on behalf of himself and all others similarly situated, alleging that defendants BMW of North America, LLC ("BMW NA"), Bayerische Motoren Werke Aktiengesellschaft ("BMW AG"), and BMW Manufacturing Company, LLC ("BMW MC") fraudulently concealed and failed to address alleged safety defects present in certain BMW motor vehicle models. The allegedly defective vehicle models include all BMW-designed X5 series vehicles from 2000 to 2008, X3 series vehicles from 2004 to 2010, and 5 series vehicles from 2004 to 2010 (the "Class Vehicles"). Catalano alleges that the Class Vehicles are defective because electronic components are located in trunk and cargo areas that make them prone to damage and failure due to water exposure, a problem compounded by the fact that sunroof

drainage tubes are prone to clogging and rupturing, which causes leakage into trunk areas.

On March 1, 2016, the Court granted in part and denied in part defendants' motion to dismiss Catalano's First Amended Complaint ("FAC"). Catalano v. BMW of N. Am., LLC ("Catalano I"), No. 15-cv-4889 (KBF), 2016 WL 844832 (S.D.N.Y. Mar. 1, 2016). The Court concluded that Catalano plausibly pleaded a claim under N.Y. GBL § 349 ("GBL § 349") against defendants BMW NA and BMW AG (referred to herein as "Defendants" or "BMW"), but dismissed all other claims against these defendants, and all claims against BMW MC. The Court also granted Catalano leave to replead solely his fraudulent concealment claim against BMW NA and BMW AG. Catalano re-pled this claim in a Second Amended Complaint ("SAC"), which he filed on March 31, 2016. (ECF No. 67.)

Currently pending before the Court are two motions that raise overlapping issues. The first is Catalano's motion to compel BMW AG, a foreign party, to respond to his discovery requests (ECF No. 69), and the second is Defendants' motion to dismiss the SAC (ECF No. 74). Although filed first, Catalano's motion to compel cannot be resolved until the Court first addresses Defendants' motion to dismiss, which seeks dismissal of the SAC pursuant to Rule 12(b)(6) and, at least initially, also sought dismissal of BMW AG for lack of personal jurisdiction pursuant to Rule 12(b)(2).[1]

---

[1] Although Defendants' personal jurisdiction argument was originally a cornerstone of their opposition to the motion to compel and their affirmative motion to dismiss, BMW AG has withdrawn its personal jurisdiction argument and thus consented to the Court's jurisdiction. (Defs.' Reply Br. at 1 n.1, ECF No. 87.) Had BMW AG not conceded the point, the Court would, in any event, have

For the reasons set forth below, Defendants' motion to dismiss the SAC is DENIED.  Defendants have presented no adequate basis for the Court to reconsider its determination that Catalano's GBL § 349 claim passes muster, and Catalano has added sufficient allegations to meet the particularity requirements of Rule 9(b) with respect to his fraudulent concealment claim.  As to Catalano's motion to compel BMW AG to respond to discovery requests, that motion is GRANTED IN PART.  The Court has the authority to impose discovery obligations under the Federal Rules on BMW AG as a party that has submitted itself to the Court's jurisdiction, and international comity considerations do not warrant mandating that Catalano proceed under the Hague Convention.  That being said, the Court concludes that Catalano's operative discovery requests are far too broad in light of the Court's analysis of the relevant international comity factors.  The parties shall therefore meet and confer to attempt to reach an accommodation on a narrower range of discovery as set forth below.

I.      BMW'S MOTION TO DISMISS[2]

    A.      <u>Legal Standard on a Motion to Dismiss</u>

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a

---

concluded that BMW AG waived any attack of personal jurisdiction by failing to raise the argument in its response to the FAC.  <u>E.g.</u>, <u>Gilmore v. Shearson/Am. Exp. Inc.</u>, 811 F.2d 108, 112 (2d Cir. 1987); <u>Bryant Park Capital, Inc. v. Jelco Ventures</u>, No. 05 Civ. 8702(GEL), 2007 WL 2119486, at *1 (S.D.N.Y. July 23, 2007).

[2] In <u>Catalano I</u>, this Court already provided a lengthy recitation of the factual allegations and procedural history in relation to Defendants' motion to dismiss the FAC.  <u>Catalano I</u>, 2016 WL 844832, at *2-5.  The Court does not repeat that discussion here for the sake of judicial economy, and instead only addresses the new allegations in the SAC to the extent they bear on the adequacy of Catalano's revised fraudulent concealment claim.

right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (same). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

The Court does not, however, credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id. If the court can infer no more than "the mere possibility of misconduct" from the factual averments—in other words, if the well-pleaded allegations of the complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate. Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679).

On a motion to dismiss, the Court accepts as true the factual allegations in the pleadings and draws all inferences in plaintiffs' favor. See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555-57). If a fact is susceptible to two or more competing inferences, in evaluating these motions, the Court must, as a matter of law, draw the inference that favors the plaintiff so long as it is reasonable. N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 121 (2d Cir. 2013). "[T]he existence of other, competing inferences does not prevent the

plaintiff[s'] desired inference from qualifying as reasonable unless at least one of those competing inferences rises to the level of an obvious alternative explanation." Id. (internal quotation marks omitted).

Where necessary, the Court may supplement the allegations in the Complaint with facts from documents either referenced in the Complaint or relied upon in framing the Complaint.  See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[W]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)).

B.     Discussion

BMW's motion to dismiss seeks dismissal of each of the two claims alleged in the SAC pursuant to Rule 12(b)(6): (1) Catalano's statutory claim under GBL § 349 and (2) his common law claim for fraudulent concealment.  The Court addresses each in turn.

1.     GBL § 349

As stated above, in Catalano I, the Court concluded that Catalano alleged a plausible claim under GBL § 349, and denied Defendants Rule 12(b)(6) motion to

dismiss the FAC to that extent.  Catalano I, 2016 WL 844832, at *15.  In addition to rehashing certain of the arguments they previously advanced, Defendants now also contend that Catalano's GBL § 349 claim should be dismissed against BMW AG because Catalano does not allege that he had any direct interaction with that entity.  (Defs.' Opening Br. at 7-8, ECF No. 75; Defs.' Reply Br. at 3-4.)  Defendants effectively ask the Court to revisit its prior ruling in the guise of a motion to dismiss, rather than through the proper channel of a motion for reconsideration under Rule 6.3 of the Local Civil Rules of the Southern District of New York. Defendants thus attempt to circumvent the appropriate "strict" standards that govern such motions.  See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); In re CRM Holdings, Ltd. Sec. Litig., No. 10 CIV 00975 (RPP), 2013 WL 787970, at *3 (S.D.N.Y. Mar. 4, 2013).  The reconsideration standard requires Defendants to set forth concisely the matters or controlling decisions which counsel believes the Court has overlooked and point to matters that might reasonably be expected to alter the conclusion reached by the Court.  Shrader, 70 F.3d at 257.

Even if the Court construes Defendants' arguments relating to the GBL § 349 claim as a motion for reconsideration, Defendants here fail to meet the requisite standard.  Instead, Defendants improperly "treat the court's initial decision as the opening of a dialogue in which [they] may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings."  CRM Holdings, 2013 WL 787970, at *3.  Although Defendants are correct that they retain the capacity to seek judgment as a matter of law with respect to Catalano's GBL § 349

claim at a later stage of this case, the Court's decision in Catalano I foreclosed additional pleading stage motions with respect to this claim.  Because Defendants have not presented any compelling reason why the Court should reconsider its prior ruling allowing the GBL § 349 claim to proceed, Defendants' motion is denied with respect to this claim.

2.   Fraudulent Concealment

"To establish a claim for fraudulent concealment under New York law, a plaintiff must allege that: '(1) the defendant made a misrepresentation or a material omission of fact which was false and which the defendant knew to be false; (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it; (3) the plaintiff justifiably relied on the misrepresentation or material omission; ... (4) injury [and (5)] the defendant had a duty to disclose the material information.'" Catalano I, 2016 WL 844832, at *13 (quoting Bannister v. Agard, 125 A.D.3d 797, 798 (2d Dep't 2015)).  "'In the case of fraudulent concealment or omission, where the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through fraud.'" Id. (quoting Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC, 842 F. Supp. 2d 502, 513 (S.D.N.Y.2012)).  "A plaintiff must also 'allege facts that give rise to a strong inference of fraudulent intent, which may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious

misbehavior or recklessness.'" Id. (quoting Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)).

The Court dismissed Catalano's fraudulent concealment claim in Catalano I on the ground that the FAC failed to adequately plead a strong inference of fraudulent intent as required by Fed. R. Civ. P. 9(b). Id. at *12-14. Specifically, the Court determined that, although the FAC adequately pleaded Defendants' knowledge of the alleged defects in the Class Vehicles, it did not adequately allege facts showing either that the Defendants had a motive and opportunity to commit fraud or facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. Id. at *13-14; see Eternity Glob. Master Fund, 375 F.3d at 187. The Court further explained that it would permit Catalano to re-plead this claim because the Court considered it to be a relatively close call and BMW had not squarely raised the Rule 9(b) argument in its motion. Catalano I, 2016 WL 844832, at *14.

As revised in the SAC, Catalano's allegations supporting his fraudulent concealment claim are as follows. The SAC alleges that, as early as 2004, Defendants knew—based on the issuance of service bulletins to dealerships, customer complaints, warranty claims, and communications with BMW authorized service technicians—that the Class Vehicles that BMW AG designed and manufactured and BMW NA distributed, warranted, marketed and sold, would fail under ordinary use and conditions during their anticipated useful life. (SAC ¶ 86.) The SAC alleges that BMW had exclusive access and control over the information

related to the safety implications of the material defects relating to the Class Vehicles' electronic component issues,[3] but purposely concealed that information from third parties such as the National Highway Traffic Safety Administration ("NHTSA") and did not disclose testing or its rationale behind the Service Information Bulletins ("SIBs") developed to address the defects.  (SAC ¶¶ 87-89.) The SAC alleges that, despite being aware of the alleged defects, Defendants failed to provide owners with adequate instructions to prevent water leakage and engaged in a routine practice of blaming vehicle owners and lessees for damage that Defendants knew was caused by the vehicles' design so that Defendants would not have to bear the costs of repairs.  (SAC ¶¶ 90-94.)  Although certain of Catalano's allegations are arguably suggestive of affirmative fraudulent misrepresentations by Defendants, Catalano's claim is for fraudulent concealment based on omissions.

The SAC further alleges that Defendants were motivated to conceal information relating to the defects from Class Vehicle owners and lessees because disclosing the potential safety risks to the vehicles would have rendered Defendants unable to sell new Class Vehicles in the primary market or as part of their "Certified Pre-Owned" program on the secondary market without having to incur costs for making the necessary repairs.  (SAC ¶¶ 95-96.)  The SAC alleges that Defendants acted recklessly by blaming customers for failing to address issues with their vehicles' electronic components because Defendants knew that the Class Vehicles' defects, if left unaddressed pursuant to the instructions contained in the

---

[3] The allegations regarding the Class Vehicles' defects and Defendants' knowledge of those defects are set forth in detail in <u>Catalano I</u>.  <u>Catalano I</u>, 2016 WL 844832, at *2-3.

SIBs that Defendants sent to authorized service technicians, were material and posed potential safety risks.  (SAC ¶ 97.)  The SAC alleges that customers reasonably relied on Defendants' misrepresentations and omissions because they were entitled to expect that Class Vehicles would not be sold or leased with known safety defects, and that owners and lessees of Class Vehicles suffered damages by having to pay for the relocation of electronic components in their vehicles to avoid water damage.  (SAC ¶¶ 102-03.)

Defendants argue that Catalano's revised allegations fail to cure the deficiencies that the Court identified in Catalano I.  Specifically, they contend that Catalano continues to allege only a generalized motive to increase profits and that the SAC still offers no particularized facts giving rise to an inference of conscious misbehavior or recklessness.  Defendants also argue that the information purportedly withheld from plaintiffs could not have been fraudulently concealed because it was disclosed to third parties.  As explained below, although perhaps still not the strongest allegations of fraudulent concealment, the Court concludes that the SAC does enough to meet the requirements of Rule 9(b) and plead a plausible claim.

First, as the Court previously determined in relation to the FAC in Catalano I, the SAC contains sufficient allegations to plausibly plead Defendants' awareness of the alleged defects through numerous complaints made to the NHTSA and on consumer forums, and based on repair invoices, warranty claims and through SIBs

that Defendants issued to dealers describing the defects to electronic components. (SAC ¶¶ 3-9, 50-51, 57, 59, 62.)

Second, the SAC adequately alleges Defendants' opportunity to commit fraud based on their exclusive possession of information relating to the electronic component defects and that Defendants were motivated to commit fraud by a desire to avoid repair costs to new and pre-owned Class Vehicles that defendants sought to sell to consumers.  (SAC ¶¶ 93-96.)  As revised, the SAC's allegations of motive no longer consist of a mere generalized allegation that BMW had an interest in increasing profits.  The allegations are sufficiently specific to meet Catalano's burden at this stage.

Third, although still a close call, the revised allegations also do enough to plead conscious misbehavior or recklessness to the extent necessary to give rise to a strong inference of fraudulent intent.  Eternity Glob. Master Fund, 375 F.3d at 186; see also In re Carter-Wallace, Inc., Sec. Litig., 220 F.3d 36, 39 (2d Cir. 2000). Catalano no longer attempts to create such an inference solely based on Defendants' knowledge of the Class Vehicles' defects; rather, the SAC has added allegations that Defendants were in exclusive possession and control of information relating to the alleged defects—including testing, internal memoranda and the rationale and decisions relating to its development and release of the SIBs, as well as information relating to the safety implications of the alleged defects—that it purposefully withheld from all outside third parties.  (SAC ¶ 87.)  Where, as here, the defects are alleged to create safety issues such as the loss of power while a motor vehicle is in

active operation (SAC ¶ 1), these allegations are sufficient to give rise to a duty to disclose based on Defendants' superior exclusive knowledge and the inherent unfairness of the transaction with Class Vehicle owners and lessees that would otherwise result.  See Garcia v. Chrysler Grp. LLC, 127 F. Supp. 3d 212, 235 (S.D.N.Y. 2015) (citing Grand Union Supermarkets of the Virgin Islands, Inc. v. Lockhart Realty Inc., 493 F. App'x 248, 252 (3d Cir. 2012)); Woods v. Maytag Co., 807 F. Supp. 2d 112, 124 (E.D.N.Y. 2011).  The Court, of course, makes no determination at this stage whether Catalano will be able to muster evidence to support these allegations; for now, the Court must accept these allegations as true and draw all reasonable inferences in Catalano's favor, which leads the Court to conclude that Catalano has pled facts giving rise to a strong inference of conscious misbehavior or recklessness.

Finally, Defendants also argue that the SAC fails to distinguish which defendant—either BMW AG or BMW NA—made which fraudulent misrepresentations and omission, in contravention of Rule 9(b)'s specificity requirements.  Warren v. John Wiley & Sons, Inc., 952 F. Supp. 2d 610, 622 (S.D.N.Y. 2013) (stating that Rule 9(b) requires that the plaintiff specify which defendant in particular made the complained of acts or omissions).  This argument is meritless because the SAC does adequately differentiate such that when the allegations are construed in the light most favorable to Catalano and all reasonable inferences are drawn in his favor, proper attribution of each category of alleged omissions becomes clear.  The SAC alleges that BMW AG is the entity that designed

and tested the Class Vehicles and therefore is responsible for withholding relevant information from consumers relating to what those processes revealed with respect to the alleged defects.  (SAC ¶¶ 28, 87-89.)  The SAC alleges that BMW NA is the warrantor and distributor of the Class Vehicles, and thus creates a reasonable inference that BMW NA is responsible for withholding information about customer complaints and warranty claims relating to the alleged defects, and for shifting blame to Class Vehicle owners and lessees when they complained about the alleged defects.  (SAC ¶¶ 28, 87, 92-94.)  In short, the allegations are sufficient to "specify [Defendants'] respective roles in the manipulation," Ritani, LLC v. Aghjayan, 970 F. Supp. 2d 232, 250 (S.D.N.Y. 2013), and make clear which alleged omissions are attributable to each defendant; that is all that Catalano need do at this stage.

Because Catalano has added sufficient allegations to state a fraudulent concealment claim that meets the heightened pleading standards of Rule 9(b), Defendants' motion to dismiss is DENIED.

## II.   CATALANO'S MOTION TO COMPEL

Also pending before the Court is Catalano's April 19, 2016 discovery motion seeking to compel defendant BMW AG to respond to the document requests that Catalano initially served on November 18, 2015.  (ECF No. 69.)[4]  It is undisputed that BMW AG is a foreign defendant based in Munich, Germany, that designed and

---

[4] Discovery was subsequently temporarily stayed during the pendency of Defendants' motion to dismiss the FAC.  (See ECF No. 63.)  Fact discovery is now set to close on February 1, 2017.  (ECF No. 66.)  The dispute underlying Catalano's motion to compel was previously raised to the Court at the status conference held on March 3, 2016.  (See March 3, 2016 Tr. at 12:21-17:5, ECF No. 83.)  At that conference, the Court suggested that the parties meet and confer to reach a narrower set of discovery requests that BMW AG would agree to produce willingly to allow Catalano to obtain some discovery without the need for the Court's intervention.  Those efforts failed, resulting in the instant motion.

manufactured the Class Vehicles at issue in this case, and that the documents and information that Catalano seeks from BMW AG are located in Germany.  BMW AG opposed the motion in a letter dated April 22, 2016, in which it argued that Catalano's discovery request—consisting of fifty-five document requests (plus sub-parts) and twenty-four interrogatories (see Keller Decl., Ex. C, ECF No. 70-3; Dalton Decl., Ex. D, ECF No. 82)—is unduly broad in light of the fact that it is a foreign defendant and the documents and information that Catalano seeks are located abroad.  (ECF No. 71.)  BMW AG further argued that Catalano should either be required to proceed by conducting discovery in accordance with the Hague Convention or that, at the very least, the scope of discovery should be narrowed based on principles of international comity.[5]  In light of BMW AG's request to allow the parties to engage in further briefing given the complex issues raised by the motion, the Court granted the parties leave to make additional submissions on the issue.  (ECF No. 73.)  Catalano submitted his supplemental brief on April 29, 2016 (ECF No. 76); BMW AG submitted its supplemental response on May 9, 2016 (ECF No. 81).

Having considered the parties' arguments, and in light of the Court's rulings on BMW's motion to dismiss the SAC, Catalano's motion to compel is GRANTED IN PART.  The Court will allow Catalano to proceed with discovery against BMW AG under the Federal Rules, but will require the parties to meet and confer to attempt to narrow the scope of Catalano's requests to a degree amenable to both parties.

---

[5] BMW AG's opposition also rested, in large part, on its assertion that the Court lacked personal jurisdiction over it.  Because BMW AG withdrew that argument in its reply brief in support of its motion to dismiss the SAC, the Court deems that claim abandoned.

That meet and confer will be informed by the Court's views regarding the relevant international comity factors set forth below.

A.  <u>Legal Standards</u>

"The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, opened for signature, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, prescribes certain procedures by which a judicial authority in one contracting state may request evidence located in another contracting state." <u>Milliken & Co. v. Bank of China</u>, 758 F. Supp. 2d 238, 243 (S.D.N.Y. 2010) (quotation marks omitted).  "The Hague Convention is not the exclusive means for obtaining discovery from a foreign entity[, n]or is the Convention necessarily the means of first resort."  <u>First Am. Corp. v. Price Waterhouse LLP</u>, 154 F.3d 16, 21 (2d Cir. 1998) (citing <u>Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa</u>, 482 U.S. 522, 539-42 (1987)); <u>see also</u> <u>Milliken & Co.</u>, 758 F. Supp. 2d at 247 ("[T]he mere fact that the Hague Convention provides an alternative method for obtaining the documents is not proof that it is necessarily an effective, or efficient, method for doing so in this case.").  For instance, where, as here, the Court has personal jurisdiction over the foreign party, the Court "'has the <u>power</u> to impose discovery under the Federal Rules of Civil Procedure.'"  <u>S.E.C. v. Euro Sec. Fund</u>, No. 98 Civ. 7347 (DLC), 1999 WL 182598, at *3 (S.D.N.Y. Apr. 2, 1999) (quoting <u>Societe Nationale</u>, 482 U.S. at 553 n.4 (Blackmun, J., concurring)) (emphasis in original); <u>see also</u> <u>Minpeco, S.A. v. Conticommodity Servs., Inc.</u>, 116 F.R.D. 517, 520 (S.D.N.Y. 1987) (stating that a court has the power under Rule 37(b)(2) to issue an order to compel discovery against a foreign party).  The question

15

thus becomes whether the Court <u>should</u>, as a matter of discretion, issue an order compelling discovery in light of the international comity issues raised by a request for documents or information located abroad.  <u>Minpeco</u>, 116 F.R.D. at 520.

International comity "is neither a matter of absolute obligation nor of mere courtesy and good will, but is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." <u>Linde v. Arab Bank, PLC</u>, 706 F.3d 92, 111 (2d Cir. 2013) (quotation marks omitted).[6]  "Rather than requiring application of the Hague Convention, international comity only requires that 'American courts . . . take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state.'" <u>Euro Sec. Fund</u>, 1999 WL 182598 (quoting <u>First Am. Corp.</u>, 154 F.3d at 21). The doctrine "comes into play only when there is a true conflict between American law and that of a foreign jurisdiction."  <u>In re Maxwell Commc'n Corp. plc by Homan</u>, 93 F.3d 1036, 1049 (2d Cir. 1996).  Where relevant, international comity requires a "particularized analysis of the respective interests of the foreign nation and the requesting nation." <u>Wultz v. Bank of China Ltd.</u>, 910 F. Supp. 2d 548, 552

[6] At least one commentator has observed that, although courts have at times only paid lip service to the implications raised by application of U.S. law to conduct occurring abroad, a number of courts have in the last couple of years demonstrated a renewed respect for the importance of international comity in a variety of contexts.  <u>See</u> Diego Zambrano, <u>A Comity of Errors: The Rise, Fall, and Return of International Comity in Transnational Discovery</u>, 34 Berkeley J. Int'l L. (forthcoming June 2016) (identifying a new paradigm respect for international comity exhibited in recent decisions from the United States Supreme Court, the Second Circuit, and the New York Court of Appeals).

(S.D.N.Y. 2012). "[I]n supervising pretrial proceedings, [courts] should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." Societe Nationale, 482 U.S. at 546.

Courts in this Circuit have identified the following factors as relevant in guiding a comity analysis: (1) the importance of the documents or other information requested to the litigation, (2) the degree of specificity of the request, (3) whether the information originated in the United States, (4) the availability of alternative means of securing the information, (5) the extent to which noncompliance would undermine important interests of the United States, or compliance would undermine important interests of the foreign nation where the information is located, (6) any hardship the responding party would suffer if it complied with the requests and (7) whether the responding party has proceeded in good faith. Wultz, 910 F. Supp. 2d at 552-53; accord Milliken & Co., 758 F. Supp. 2d at 246; Minpeco, 116 F.R.D. at 522-23.

B.   Discussion

At the outset, it is clear that, as BMW AG is a defendant that has submitted itself to the Court's jurisdiction in this action, the Court has the power to order BMW AG to provide discovery to Catalano through the Federal Rules, rather than through the Hague Convention. Nonetheless, in light of BMW AG's assertion that production of material from Germany would create a conflict with German law (an argument that the Court discusses in further detail below), the Court conducts a comity analysis to determine whether it should order discovery under the Federal

17

Rules and, if so, what the proper scope of such discovery should be. Ultimately, the Court's weighing of the relevant factors leads to the conclusion that BMW AG must produce at least some discovery pursuant to the Federal Rules, but that Catalano's current document and interrogatory requests are far too broad. Accordingly, the Court directs the parties to engage in a meet and confer—with the benefit of the Court's views as to the relevant factors—to attempt to agree on a narrower set of requests that would be amenable to both parties.

### 1.   Importance of the Information Requested

Within the broad range of discovery that Catalano has sought against BMW AG, his requests for documents and information relating to design and testing are highly material to this case, which primarily concerns allegations of a design defect in the Class Vehicles. At least some of the requested material is vital to allow Catalano to prove that the defects in fact existed so that he can establish that Defendants' omissions were fraudulent. See Milliken & Co., 758 F. Supp. 2d at 246-47 (stating that a court must assess where the requested information falls on the spectrum "between merely relevant at one end and crucial at the other"); Reino De Espana v. Am. Bureau of Shipping, No. 03CIV3573LTSRLE, 2005 WL 1813017, at *7 (S.D.N.Y. Aug. 1, 2005) ("[P]roduction is favored when the evidence sought from the producing party is directly probative to the issues of the case."). As the Court explains below in relation to the next factor, other requests are decidedly less material at this stage. This factor nonetheless weighs in Catalano's favor.

2.    Specificity of the Requests

As discussed above, Catalano seeks to compel BMW AG to respond to fifty-five document requests and twenty-four interrogatories.  (See Keller Decl., Ex. C; Dalton Decl., Ex. D.)  Although certain of these requests are focused on the core issues relating to the alleged defects, others are far broader and ask for all information relating to the electronic component parts and drainage tubes that Catalano alleges are defective and all documents relating to any alleged defects in those components.  Other requests appear to be more appropriately directed to BMW NA, which the parties agree is responsible for distributing and selling the Class Vehicles in the United States, or request information relating to vehicles sold throughout the United States, rather than just in New York, where the putative plaintiff class is located.  (See SAC ¶ 76.)  Catalano himself acknowledges that these requests merely reflect an opening negotiating position from which Catalano would seek to narrow through a meet and confer.  (See Pl.'s Supp. Br. at 3, ECF No. 76.)  In short, although Catalano's requests do not necessarily constitute a fishing expedition, in total they are nonetheless substantially overbroad for Catalano's needs.  This factor therefore weighs in BMW AG's factor.

3.    Origin of the Information

BMW AG itself has no presence in the United States; all information, documents, and persons who would be involved in compiling responses to Catalano's requests are located in Germany.  (Dalton Decl. ¶ 9, ECF No. 72.)  Because all of the requested material is located outside of the United States—and compliance would impose obligations on persons outside the United States, this factor favors BMW

19

AG.  Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1475 (9th Cir.

1992); see also Milliken & Co., 758 F. Supp. 2d at 247 (stating that "the third factor

only addresses the physical location of the documents").

        4.    Alternative Means

      Where the information sought is easily obtainable elsewhere, there is little

reason to require a party to violate foreign law; on the other hand, where the

information cannot be easily obtained through alternative means, this factor weighs

in favor of disclosure.  Milliken & Co., 758 F. Supp. 2d at 247.  Catalano's broad

discovery request seeks information as to various topics that may or may not be

most easily obtainable from BMW AG.  As to documents and information relating to

the design and testing of Class Vehicles, it appears that BMW AG is the only

available source for this material.  See Sharma v. BMW of N. Am. LLC, No. 13-cv-

02274-MMC (KAW), 2016 WL 1019668, at *4-5 (N.D. Cal. Mar. 15, 2016) (BMW NA

representing that documents relating to design, manufacturing and testing are in

the possession of BMW AG).  Outside of the Hague Convention process, which may

be time consuming and expensive, e.g., S.E.C. v. Gibraltar Glob. Sec., Inc., No. 13

Civ. 2575(GBD)(JCF), 2015 WL 1514746, at *5 (S.D.N.Y. Apr. 1, 2015); Strauss v.

Credit Lyonnais, S.A., 249 F.R.D. 429, 456 (E.D.N.Y. 2008), discovery under the

Federal Rules appears to be the only alternative.  This factor therefore weighs in

Catalano's favor to that extent.  As to documents and information relating to the

marketing and sale of Class Vehicles, it appears that the sought discovery is more

readily obtainable from BMW NA, which is a domestic defendant and is alleged to

be responsible for those activities.  Similarly, it appears that, inter alia,

communications between BMW entities and the NHTSA can be obtained through publicly accessible means.  This factor weighs in BMW AG's favor with respect to such requests.

5.   Balance of National Interests

This factor requires the Court to consider the competing interests of the United States and Germany, the jurisdiction from which the documents and information would have to be produced to comply with Catalano's discovery request. Courts have found that the United States has "'a substantial interest in fully and fairly adjudicating matters before its courts,'" Milliken & Co., 758 F. Supp. 2d at 248 (quoting Strauss, 249 F.R.D. at 443), and a particularly strong interest in fully adjudicating product liability actions for injuries occurring in the United States, see, e.g., Valois of Am., Inc. v. Risdon Corp., 183 F.R.D. 344, 347 (D. Conn. 1997); Doster v. Schenk, 141 F.R.D. 50, 52 (M.D.N.C. 1991).  The Court therefore concludes that the United States does have a considerable interest in full adjudication of a suit that has potential safety implications for numerous vehicles owned and operated in the United States.

As a counterbalance to this interest, BMW AG contends that Germany has a competing interest in protecting citizens from expansive American discovery that conflicts with the German civil law system and also has an interest in the nondisclosure of sensitive information pursuant to the German Federal Data Protection Act ("FDPA"), which prohibits the unauthorized disclosure or transfer of personal data to countries outside of the European Union.  (Defs.' Supp. Opp. Br. at 15-16, ECF No. 81.)  Although the Court recognizes Germany's strong interest in

21

enforcing the FDPA (and that this represents the source of the alleged conflict between BMW AG's discovery obligations and foreign law), it is unclear on this motion how the documents and information that Catalano seeks—or, at least, the narrower discovery that Catalano will seek after a meet and confer—could implicate personal data under that statute.  Without such a showing, BMW AG has presented only a vague and hypothetical conflict between discovery under the Federal Rules and the FDPA, which is insufficient to warrant denial of Catalano's discovery request pursuant to the Federal Rules.  See Euro Sec. Fund, 1999 WL 182598 at *4; Pershing Pac. W., LLC v. MarineMax, Inc., No. 10cv1345-L (DHB), 2013 WL 1628938, at *2 (S.D. Cal. Apr. 16, 2013).[7]  The Court therefore concludes that, at least on the present motion, this factor weighs in Catalano's favor.

6.   Hardship of Compliance

Besides a generalized assertion that compliance with Catalano's requests could lead it to run afoul of the FDPA and thus be subject to monetary fines, BMW AG has not detailed the likelihood of any particular penalties that it would face if it produced documents and information under the Federal Rules.  Speculative assertions of hardship are insufficient to support BMW AG on this prong.  See Milliken & Co., 758 F. Supp. 2d at 249-50; In re Air Cargo Shipping Servs. Antitrust

---

[7] Although the Court arguably need not even conduct a comity analysis in the first instance where the foreign defendant has failed to establish the existence of a true conflict between U.S. and foreign law, the Court has done so here because BMW AG has raised the basis for finding a true conflict in relation to at least some of Catalano's requests, and because the Court believes the analysis will help guide the parties' negotiations during their meet and confer.  To the extent that no true conflict exists, BMW AG will be in a weaker position to argue that Catalano's discovery should be narrowly constrained.

Litig., No. 06-MD-1775, MDL No. 1775, 2010 WL 2976220, at *2 (E.D.N.Y. July 23, 2010).  This factor therefore weighs in Catalano's favor.

       7.    <u>Good Faith</u>

     "Although good faith will not insulate a party from the obligation to respond in discovery, bad faith delays and dilatory tactics will weigh against the objecting party."  <u>Milliken & Co.</u>, 758 F. Supp. 2d at 250 (quotation marks omitted).  Here, the Court cannot say that BMW AG has acted in particularly good faith in refusing to engage in a meet and confer until Catalano streamlines his discovery requests and insisting that Catalano instead proceed through the Hague Convention process, nor does the Court believe that BMW AG has exhibited particularly bad faith given the undue breadth of Catalano's requests and his refusal thus far to trim them down.  The parties are on equal footing at this prong—neither has made a genuine effort to resolve their dispute or narrow the issues without the Court's intervention.  At this juncture, therefore, this factor weighs in neither party's favor.

       8.    <u>Conclusion</u>

     Upon weighing the relevant factors, the Court concludes that it is appropriate to require BMW AG to provide discovery through the Federal Rules of Civil Procedure and that Catalano need not instead proceed under the Hague Convention process.  However, Catalano's fifty-five document requests and twenty-four interrogatories are excessive and overbroad, especially in light of the particular concerns raised by the fact that the documents and information that Catalano seeks are located in Germany.  The Court will not grant Catalano discovery as broad as if he were seeking documents and information located in the United States from a

domestic party.  On the other hand, BMW AG must understand that the Court will not hesitate to impose meaningful discovery obligations on it to the extent necessary and appropriate in this case, and that it will have to clearly explain how and why producing any particular material under the Federal Rules creates a true conflict with German law.

Because Catalano has not identified a narrower set of core requests that he deems particularly significant (although recognizing that some narrowing is appropriate), and the Court has no basis upon which to make that determination on the record before it, the Court hereby directs the parties to meet and confer to attempt to narrow the requests to a scope amenable to both parties and that, to the extent possible, avoids conflict with BMW AG's obligations under the FDPA. Should any outstanding issues remain after the parties meet and confer, either party may make a further letter motion to the Court to resolve them.  Either party shall bring such letter motion not later than **June 30, 2016**.  The Court informs the parties that, should the Court perceive either party as not bargaining in good faith to reach an equitable resolution, such conduct will be a significant factor in the Court's consideration of any further dispute on this issue.

III.   CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the Second Amended Complaint is DENIED.  Plaintiff's motion to compel BMW AG to respond to his discovery requests is GRANTED IN PART as set forth in this decision.  After engaging in a meet and confer, the parties shall present any further disputes

relating to Catalano's requests for discovery against BMW AG not later than **June 30, 2016**.

The Clerk of Court is directed to close the motions at ECF Nos. 69 and 74.

SO ORDERED.

Dated:      New York, New York
            June 16, 2016

_____
            KATHERINE B. FORREST
            United States District Judge